Bradley C. Gage, Esq., S.B. No. 117808
brad@bradgagelaw.com
Milad Sadr, Esq., S.B No. 245080
milad@bradgagelaw.com
Sarah E. Gage, Esq., S.B. No. 306090
sarah@bradgagelaw.com
BRAD GAGE LAW
A Professional Corporation
23002 Victory Boulevard
Woodland Hills, California 91367
(818) 340-9252  Fax: (818) 340-9088

Attorneys for Plaintiffs,
CHRISTINA PSALMS, and MARCUS PSALMS individually and as successors in interest to JON-MARQUES PSALMS

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTINA PSALMS, and MARCUS PSALMS individually and as successors in interest to JON-MARQUES PSALMS,<br><br>    Plaintiffs,<br><br>    vs.<br><br>CITY AND COUNTY OF SAN FRANCISCO, SAN FRANCISCO POLICE DEPARTMENT, CHRISTOPHER CANNING, RAY CRUZ, DOE 4, and DOES 3,5-10, inclusive,<br><br>    Defendants. | Case No. 3:26-cv-03880 LB<br><br>**FIRST AMENDED COMPLAINT**<br><br>    **1. BATTERY**<br>    **2. STATE CREATED DANGER**<br>    **3. DEPRIVATION OF FAMILIAL RELATIONS**<br>    **4. NEGLIGENCE**<br>    **5. <u>MONELL</u>**<br><br>Trial Date: Not Set |

**FIRST AMENDED COMPLAINT FOR DAMAGES**

**Page** 1

## FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

1. COME NOW PLAINTIFFS CHRISTINA PSALMS, and MARCUS PSALMS individually and as successors in interest to JON-MARQUES PSALMS, of which CHRISTINA PSALMS and MARQUES PSALMS are beneficiaries (hereafter "PLAINTIFFS") who demands a jury trial, and seeks monetary compensation against all of the Defendants, as follows.

2. CHRISTINA PSALMS and MARQUES PSALMS are residents of California and parents to decedent Jon-Marques Psalms.

3. At the time of his death, Jon-Marques Psalms was a resident of Alameda County in the State of California.

4. At all times mentioned herein, defendant CITY AND COUNTY OF SAN FRANCISCO (hereafter also "CITY") was a public entity duly organized and existing under and by virtue of the laws of the State of California. The San Francisco Police Department ("SFPD") is a part of the city.

5. Defendant CHRISTOPHER CANNING (formerly sued as DOE 1) was a captain at SFPD, a managerial level or supervisory level employee of the SFPD. At all times relevant hereto, CANNING was acting within the course and scope of his employment. CANNING was engaged in the conduct alleged herein under color of State Law, and through the auspices of the City of San Francisco and San Francisco Police Department. The conduct and actions of CANNING occurred during normal working hours as San Francisco Police

**FIRST AMENDED COMPLAINT FOR DAMAGES**

Department captain or occurred under the pretense that either was acting as a San Francisco Police Department captain or was made possible solely because of his position as a San Francisco Police Department captain. CANNING acted at all times herein under the auspices, direction, command, instruction, and/or control of the San Francisco Police Department and its' Chief of Police.

6. Defendant RAY CRUZ (formerly sued as DOE 2) was a lieutenant at SFPD, a managerial level or supervisory level employee of the SFPD. At all times relevant hereto, CRUZ was acting within the course and scope of his employment. CRUZ was engaged in the conduct alleged herein under color of State Law, and through the auspices of the City of San Francisco and San Francisco Police Department. The conduct and actions of CRUZ occurred during normal working hours as a San Francisco Police Department lieutenant or occurred under the pretense that either was acting as a San Francisco Police Department lieutenant or was made possible solely because of his position as a San Francisco Police Department lieutenant. CRUZ acted at all times herein under the auspices, direction, command, instruction, and/or control of the San Francisco Police Department and its' Chief of Police.

7. At all times relevant herein, DOE 1 and Does 2-3, was a resident of Alameda County. At all times relevant hereto, said defendants were acting within the

**FIRST AMENDED COMPLAINT FOR DAMAGES**

**Page** 3

course and scope of their employment as captains chiefs, policy makers, and/or civilian employees of the SFPD.

8. Defendant DOE 1, and Does 2-3, and each of them were managerial level or supervisory level employees of the SFPD.

9. At all times relevant herein, DOE 1 and Does 2-3, was a resident of Alameda County. At all times relevant hereto, said defendants were acting within the course and scope of their employment as captains chiefs, policy makers, and/or civilian employees of the SFPD.

10. At all times relevant herein, defendant DOE 4 and Does 5-6, were residents of Alameda County. At all times relevant hereto, said defendants were acting within the course and scope of their employment as police officers, sergeants, captains and chiefs, policy makers, and/or civilian employees of the SFPD.

11. At all times relevant herein, defendant DOE 4 and Does 5-6 was a San Franscisco Police Department officer and engaged in the conduct alleged herein under color of State Law, and through the auspices of the City of San Francisco and San Francisco Police Department. Plaintiff alleges that the conduct and actions of DOEs 4 -6 as alleged herein occurred during DOE 4 and Does 5-6's normal working hours as San Francisco Police Department officers or occurred under the pretense that either was acting as a San Francisco Police Department officers or was made possible solely because of his position as a San Francisco Police Department officer. Plaintiff further

**FIRST AMENDED COMPLAINT FOR DAMAGES**

**Page** 4

alleges that DOE 4 and Does 5-6 acted at all times herein under the auspices, direction, command, instruction, and/or control of the San Francisco Police Department and its' Chief of Police.

12. At all times relevant herein, defendant Does 7-10 were police officers, detectives. sergeants, captains and chiefs, policy makers, and/or civilian employees agents and representatives of the San Francisco Police Department and engaged in the conduct alleged herein under color of State Law, and through the auspices of the City of San Francisco and San Francisco Police Department. Plaintiff alleges that the conduct and actions of Does 7-10 as alleged herein occurred during Does 7-10's normal working hours as San Francisco Police Department police officers, detectives. sergeants, captains and chiefs, policy makers, and/or civilian employees agents and representatives or occurred under the pretense that either was acting as a San Francisco Police Department police officers, detectives. sergeants, captains and chiefs, policy makers, and/or civilian employees agents and representatives or was made possible solely because of their position as a San Francisco Police Department police officers, detectives. sergeants, captains and chiefs, policy makers, and/or civilian employees agents and representatives. Plaintiffs further allege that Does 7-10 acted at all times herein under the auspices, direction, command, instruction, and/or control of the San Francisco Police Department and its' Chief of Police.

**FIRST AMENDED COMPLAINT FOR DAMAGES**

13. At all times relevant herein, defendants DOES 3,5-10, were residents of the County of San Francisco, and were San Francisco Police Department police officers, sergeants, detectives, captains, lieutenants, chiefs, and/or civilian employees, agents and representatives of the San Francisco   Police Department and employees, agents and representatives of the City of San Francisco. At all times relevant hereto, said defendants were acting within the course and scope of their employment as officers, sergeants, captains and chiefs, policy makers, and/or civilian employees of the  San Francisco   Police Department, a department and subdivision of defendant City of San Francisco . At all times relevant herein, said defendants were acting under color of law, to wit, under the color of the statutes, ordinances, regulations, policies, customs, practices and usages of City of San Francisco, its chiefs', department and/or the State of California.

14. Plaintiff is ignorant of the true names and capacities of defendants sued herein as DOE defendants 3,5 through 10, inclusive, and therefore sue these defendants by such fictitious names. Plaintiff will amend this complaint to allege their true names and capacities when ascertained. Plaintiff is informed and believes and thereon allege that each of the fictitiously named defendants is responsible in some manner for the occurrences herein alleged, and that Plaintiff's injuries as herein alleged were directly and legally (proximately) caused by the acts and/or omissions of said fictitiously named defendants.

**FIRST AMENDED COMPLAINT FOR DAMAGES**

15. At all times relevant herein, all of the defendants engaged in the conduct alleged herein under color of State Law, and through the auspices of the City of San Francisco and San Francisco Police Department. Plaintiff alleges that the conduct and actions of defendants as alleged herein occurred during defendants normal working hours as San Francisco Police Officers, Supervisors, Managers, Captains or Chief or occurred under the pretense that either was acting as a San Francisco Police Department Officers, Supervisors, Managers, Captains or Chief or was made possible solely because of his/their position as a San Francisco Police Department Supervisors, Managers, Captains or Chiefs.

16. All of the acts complained of herein by Plaintiffs against Defendants were done and performed by said Defendants by and through their authorized agents, servants, partners, co-conspirators, alter egos, joint venturers, and/or employees, all of whom at all relevant times herein were acting within the course, purpose, and scope of said agency, service, joint venture, and/or employment capacity, but outside of the normal work setting. Moreover, Defendants and their agents ratified all of the acts complained of herein.

17. Reference to actions or conduct of "Defendants" shall include the singular and plural, and shall include all DOE Defendants to which the facts are later shown to apply.

**FIRST AMENDED COMPLAINT FOR DAMAGES**

18. On or about September 16, 2025, Plaintiffs filed comprehensive and timely claims for damages with the CITY pursuant to applicable sections of the California Government Code. A true and correct copy of that claim form is attached hereto as **exh "1"** and incorporated by this reference.

19. On or about October 28, 2025, Defendants rejected the claim. A true and correct copy of those rejections are attached hereto as **exh "2"** and incorporated by this reference.

## VENUE AND JURISDICTION

20. This Court has original jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3)-(4) because Plaintiffs assert claims arising under the laws of the United States including 42 U.S.C. § 1983 and the Fourteenth Amendments of the United States Constitution. Venue is proper in this Court under 28 U.S.C. § 1391(b) because Defendants reside in this district and all incidents, events, and occurrences giving rise to this action occurred in this district.

## I. FACTUAL ALLEGATIONS

21. Plaintiffs CHRISTINA and MARCUS PSALMS, at all times mentioned herein, were individuals residing in San Bernardino County, State of California. CHRISTINA and MARCUS PSALMS are the parents of the decedent, JON-MARQUES PSALMS. They are the successors in interest, heirs, and personal legal representatives of the decedent to seek redress for the deprivation of the decedent's rights and for those damages that the decedent

**FIRST AMENDED COMPLAINT FOR DAMAGES**

sustained and incurred before death, and the decedent would have been entitled to recover, had he lived as defined by Section 377.34 of the California Code of Civil Procedure.

22.    Plaintiff, JON-MARQUES  PSALMS at all times mentioned herein, was an individual residing in the City of SAN FRANCISCO, State of California. CHRISTINA and MARCUS PSALMS are the successors in interest.

23.    The Plaintiffs sue as individuals in their own rights, and as the successors in interest of JON-MARQUES  PSALMS.

24.    JON-MARQUES  Psalms joined the SFPD Academy on May 5, 2025, as a member of the 286th Academy Class. Prior to entering the Academy, JON-MARQUES  was in excellent physical health. JON-MARQUES  had no known medical conditions that would have impaired his ability to safely participate in academy training.  Defendants had a duty to check for any potential medical problems and failed to check or to discover any such conditions.

25.    On or about August 20, 2025, JON-MARQUES  participated in a high-intensity training exercise commonly referred to as a "Red Man" drill. The drill involved strenuous calisthenics designed to significantly elevate recruits' heart rates prior to a simulated combat scenario. During the drill, JON-MARQUES  was inflicted with a head injury by DOE 4, which caused a brain

**FIRST AMENDED COMPLAINT FOR DAMAGES**

**Page 9**

bleed.  Based on information and belief, the brain bleed was intentionally inflicted upon JON-MARQUES.

26.  During the training exercise the morning of August 20, 2025, instructors failed to properly monitor and protect the recruits from injury and failed to ensure the recruits were properly hydrated.  Despite the known risk of exertional rhabdomyolysis during extreme physical training, Defendants failed to conduct appropriate medical screening or laboratory testing, including creatine kinase (CK) testing, to assess muscle breakdown or internal distress.

27.  After the drill, **Error! Bookmark not defined.** JON-MARQUES  was found lying face down on the ground.

28.  JON-MARQUES  was taken by ambulance to UCSF Medical Center Emergency Room.

29.  Since 2005, drills intended to teach defensive tactics at law enforcement academies have been linked to at least a dozen deaths and hundreds of injuries, some resulting in permanent disability.

30.  In 2016, the State of Massachusetts banned the use of "Red Man" drills.

31.  In 2020, a recruit who was training to be a deputy for the Santa Clara County Sheriff's Office died after engaging in a "Red Man" drill.

32.  In 2024, the Texas Game Warden Academy was involved in several cases of cadets enduring four-on-one combat drills, sustaining severe concussions, skull fractures, and other debilitating injuries.

**FIRST AMENDED COMPLAINT FOR DAMAGES**

33.   Title 8 CCR §3203(a)(4),(6) requires the employers to identify, evaluate, and correct workplace hazards. Hence, SFPD was legally required to identify, evaluate, and correct hazards present with the "Red Man" drill.

34.   Title 8, CCR section 1070 requires properly trained instructors and a sufficient number of instructors to protect recruits and others participating in Red Man drills from injury.

35.   Objectively, the hazards present with the "Red Man" drill are well-known in law enforcement. Yet, Defendants have intentionally refused to remedy known hazards despite actual knowledge of the deficiencies and risks to the lives of trainees.

36.   On or about August 20, 2025, Defendants intentionally did not determine a health baseline for JON-MARQUES  even though such a measurement is essential to safe implementation of high-intensity drills such as "Red Man."

37.   In fact, under SFPD General Order 11.10, active officers participate in the SFPD Physical Fitness Evaluation Program to measure and establish their baseline physical capabilities.

38.   Additionally, on or about August 20, 2025, Defendants did not measure or in any way medically monitor JON-MARQUES 's vital signs.

39.   Defendants did not know or monitor vital signs during high-intensity drills is essential to the safety of participants.

**FIRST AMENDED COMPLAINT FOR DAMAGES**

**Page** 11

40. Measuring vital signs has become common place in police departments and other places where high-intensity exercises are employed.

41. Title 8 CCR §3203(a)(7) requires the employer to provide training and instructions. Here, on or about August 20, 2025, supervisory personnel present were not trained to ensure that intense training would not harm the recruits. Defendants did not provide training of other means such as the use of electronic monitoring devices to supervise personnel during the recruits' intense physical training. These devices are to monitor the vital signs of the recruits during their intense exercise.

42. At approximately 9:00 a.m. that morning (Wednesday, August 20th, 2025), JON-MARQUES 's parents, Marcus Psalms and Christina Psalms, were contacted by Sergeant Ryan Jones, who stated JON-MARQUES was being evaluated for dehydration following intensive calisthenics. Plaintiffs were not informed that JON-MARQUES had been found unconscious, sustained a head injury, or that he was found face down on the ground. Thus, Defendants concealed evidence of the intentional injuries inflicted on JON-MARQUES.

43. When Christina Psalms arrived at UCSF later that day, she was informed for the first time that JON-MARQUES was suffering from rhabdomyolysis and a brain bleed. Which defendants had concealed from her.   Shortly thereafter, JON-MARQUES experienced respiratory distress and cardiac arrest, was placed on life support, and never regained consciousness.   (The coroner also

**FIRST AMENDED COMPLAINT FOR DAMAGES**

attempted to conceal the presence of a brain bleed, based on information and belief to protect defendants from obtaining evidence that JON-MARQUES was intentionally struck in the head during training.)

44.   JON-MARQUES died as a result of Post-Exertional Secondary Rhabdomyolysis and Cerebral Hypoxic-Ischemic Brain Injury due to an unauthorized blow to his head and Post-Exertional Cardiac Arrhythmogenic Collapse/Syncope due to Congenital Cardiomyopathy and Channelopathy which could have been diagnosed and avoided with proper medical screening and testing which defendants failed to perform in deliberate indifference to his medical needs.

45.   The next morning, Thursday August 21, 2025, JON-MARQUES was determined to be stable enough to move and get a CT scan done. Subsequent imaging confirmed an active brain bleed and severe brain swelling–a fatal condition inexplicably left out of the coroner's report. The neurosurgeon believed that surgery, although risky, was necessary as a last-ditch effort to save JON-MARQUES 's life. John suffered pain, fear, emotional distress, and other non-economic damages before he died.

46.   While in the ICU waiting room during JON-MARQUES 's surgery, Christina was approached by one of JON-MARQUES 's doctors, Dr. O'Brien. The doctor asked Christina to tell him more information about when JON-MARQUES was found unconscious at the academy. This was the first time

**FIRST AMENDED COMPLAINT FOR DAMAGES**

Christina had heard anything about JON-MARQUES being unconscious as it was also part of the code of silence. Christina looked at the two officers (Laura Anderson and Jennifer Viceral), who looked at each other before saying they didn't know anything about that.

47. Following the surgery, the family was notified that the outcome was not good and the swelling and brain bleeding were way worse than they had initially believed. There was also no lower brain stem activity detected.

48. The next morning, Friday August 22, 2025, the hospital team began to discuss the transition off of life support with JON-MARQUES 's family. The SF Mayor, SFPD Chiefs, Sergeants, Lieutenants, and JON-MARQUES 's fellow recruits arrived at the hospital and gathered in the ICU. Also present were Captain Chris Canning and Lieutenant Ray Cruz.

49. The family said their goodbyes to JON-MARQUES that evening. He was pronounced dead on August 22, 2025, at 6:27 p.m.

50. Rhabdomyolysis in this case was a mechanism of death and not an underlying cause of death. Rhabdomyolysis can be attributed to exogenous triggers and environmental factors such as strenuous exercise, febrile infections and heat stroke, combined with predisposing genotypes and the apparent blow to his head.

51. Based on information and belief, exposure to strenuous high-intensity training exercises, was an exogenous factor, combined with JON-MARQUES 's

**FIRST AMENDED COMPLAINT FOR DAMAGES**

prevailing genotype triggered cardiogenic hypoxemia and rhabdomyolysis as part of his mechanisms of death.

52. **Error! Bookmark not defined.**If the medical monitoring and training was properly performed and supervised, JON-MARQUES  would not have suffered from  either rhabdomyolysis or a brain bleed, his other serious medical conditions, and would not have died.

## FIRST CAUSE OF ACTION FOR BATTERY

## BY ALL PLAINTIFFS AGAINST DOE 4

53. Each and every allegation set forth in the preceding paragraphs is incorporated herein by this reference with the same effect as if re-alleged herein.

54. Plaintiffs bring this cause of action as a survival claim on behalf of their now deceased son.

55. Pursuant to Cal. Government Code §§ 815.2, 815.3, Defendant CITY is directly and vicariously  liable for the acts and/or omissions of DOE 4 since those acts were committed in the course and scope of employment.

56. DOE 4 touched Recruit PSALMS with the specific intent to harm or offend him.  Recruit PSALMS did not consent to the actions of DOE 4.

57. Recruit PSALMS was harmed, suffered, and then died because of the DOE 4's actions.

58. A reasonable person in Recruit PSALMS's position would have been offended by the touching.

**FIRST AMENDED COMPLAINT FOR DAMAGES**

59. As a direct and legal result of the intentional actions of the DOE 4, JON-MARQUES received life threatening injuries that killed him despite going through brain surgery for brain bleeds that he suffered from, as well as his pain, suffering, fear, worry, trepidation, and other injuries before dying.

60. The Plaintiffs are entitled to damages incurred to JON-MARQUES PSALMS before his death, and their own claims for wrongful death, loss of consortium, economic and non-economic damages, and costs according to proof at time of trial and in excess of the minimal jurisdiction of this court.

61. The aforementioned acts of DOE 4 was willful, wanton, malicious, and oppressive and said misconduct shocks the conscience thereby justifying the awarding of exemplary and punitive damages.

## SECOND CAUSE OF ACTION FOR
## STATE-CREATED DANGER BY PLAINTIFFS
## AGAINST DEFENDANTS CANNING, CRUZ & DOE 4

62. Each and every allegation set forth in the preceding paragraphs is incorporated herein by this reference with the same effect as if realleged herein.

63. Plaintiffs bring this cause of action as a survival claim.

64. This action is brought pursuant to 42 U.S.C. §1983 and the Fourteenth Amendment of the United States Constitution.

65. Under the Fourteenth Amendment, a person has the constitutional right to be free from a government employee affirmatively placing that person in a

**FIRST AMENDED COMPLAINT FOR DAMAGES**

position of actual, particularized danger (or in a situation of actual, particularized danger that is more dangerous than the position that the person already faced) if the government employee acted with deliberate indifference to a known or obvious danger.

66. On or about August 20, 2025, Defendant CANNING was a captain in SFPD. Moreover, Defendant CANNING oversaw the SFPD Police Academy, including supervisors, training, and safety.

67. On or about August 20, 2025, Defendant LT. RAY CRUZ oversaw the SFPD Police Academy day to day operations. Moreover, Defendant CRUZ oversaw the SFPD Police Academy, including supervisors, training, and safety.

68. On or about August 20, 2025, Defendant DOE 4 was a police officer and trainer at SFPD Police Academy.

69. Defendants CANNING, CRUZ, and DOE 4 forced JON-MARQUES participate in the "Red Man" drill despite well-known dangers of the drill and lack of safety precautions.

70. Defendants CANNING, CRUZ, and DOE 4 knew or should have known about much publicized risks and dangers associated with the "Red Man" drill.

71. Defendants CANNING, CRUZ, and DOE 4 did not determine a health baseline for JON-MARQUES  even though such a measurement is essential to safe implementation of high-intensity drills such as "Red Man." As such,

**FIRST AMENDED COMPLAINT FOR DAMAGES**

JON-MARQUES  was placed in a much more dangerous situation than before.

72. On or about August 20, 2025, Defendants CANNING, CRUZ, and DOE 4 did not measure or in any way medically monitor JON-MARQUES 's vital signs. As such, JON-MARQUES  was placed in a much more dangerous situation than before.

73. Defendants CANNING, CRUZ, and DOE 4 knew or should have known that on or about August 20, 2025, supervisory personnel were not trained to ensure that intense training would not harm the recruits. Defendants did not provide training of other means such as the use of electronic monitoring devices to supervisory personnel during the recruits' intense physical training. These devices are to monitor the vital signs of the recruits during their intense exercise. As such, JON-MARQUES  was placed in a much more dangerous situation than before.

74. Further, the danger was particularized (e.g., SFPD police academy recruits).

75. The danger JON-MARQUES  was exposed to was sufficiently severe to raise constitutional concerns (i.e, circumstances the can and did lead to death).

76. At all relevant times herein, CANNING and CRUZ were supervisors at SFPD. At all relevant times herein,  CANNING and CRUZ  acted under color of state law. Defendant DOE 4 was CANNING and CRUZ's subordinate.

**FIRST AMENDED COMPLAINT FOR DAMAGES**

77.    Defendants CANNING and CRUZ directed their subordinates in the acts that deprived Plaintiff of his rights.

78.    CANNING and CRUZ set in motion a series of acts by his subordinates, or knowingly refused to terminate a series of acts by their subordinates, that they knew or reasonably should have known would cause the subordinates to deprives Plaintiff's rights.

79.    CANNING and CRUZ knew that his subordinates were engaging in these acts and knew or reasonably should have known that the subordinates' conduct would deprive Plaintiff's rights; and CANNING and CRUZ failed to act to prevent their subordinates from engaging in such conduct, and actually ratified said actions.

80.    DOE 4, CANNING and CRUZ engaged in conduct that showed a reckless or callous indifference to the deprivation by the subordinate of the rights of others.

81.    DOE 4, CANNING and CRUZ's conduct was so closely related to the deprivation of Plaintiff's rights as to be the moving force that caused the ultimate injury.

82.    As a direct and legal result of the actions of defendants and each of them, plaintiff suffered harm and economic and non economic damages in a sum according to proof and in excess of the minimum jurisdiction of this court and is entitled to costs of suit and attorneys fees.

**FIRST AMENDED COMPLAINT FOR DAMAGES**

83. The aforementioned acts of said defendants were willful, wanton, malicious, despicable and oppressive and said misconduct shocks the conscience thereby justifying the awarding of exemplary and punitive damages as to all individual defendants.

**THIRD CAUSE OF ACTION FOR**
**FOURTEENTH AMENDMENT DEPRIVATION OF**
**PARENTAL-CHILD RIGHTS UNDER 42 USC § 1983 BY CHRISTINA**
**PSALMS, and MARCUS PSALMS AGAINST DEFENDANTS CANNING, CRUZ**
**& DOE 4**

84. Each and every allegation set forth in the preceding paragraphs is incorporated herein by this reference with the same effect as if re-alleged herein.

85. This action is brought pursuant to 42 U.S.C. §1983 for violation of Plaintiffs' rights under the Fourteenth Amendment.  The parents of JON-MARQUES have a direct action for their Fourteenth Amendment losses, as JON-MARQUES  had no wife or children.

86. The parents have a federal due process right to the parent-child relationship that was violated by the Defendants' conduct in which Plaintiffs have standing to sue under the Fourteenth Amendment which prohibits States from depriving "any person of life, liberty, or property, without due process of law."  Accordingly, the parents of JON-MARQUES  have a constitutionally protected liberty interest under the Fourteenth Amendment to the companionship and society of their son, and have suffered from a deprivation of their liberty interests arising out of their relationship with decedent.

**FIRST AMENDED COMPLAINT FOR DAMAGES**

87. Defendants violated the Fourteenth Amendment right of CHRISTINA and MARCUS to be free from unwarranted interference with the familial relationship with JON-MARQUES Psalms.

88. The aforesaid actions of Defendants, along with other undiscovered conduct, shock the conscience, in that they acted with deliberate indifference to the constitutional rights of CHRISTINA and MARCUS. Defendants further acted with purpose to harm unrelated to and unjustified by any legitimate law enforcement objective.

89. The wrongful death of JON-MARQUES Psalms was a direct and legal proximate cause of the injuries that Plaintiffs suffered from because of the actions of the Defendants and each of them.

90. The damages that Plaintiffs suffered from also include, but are not limited to, loss of companionship, care, love and affection, past, present and/or future medical, psychological, psychiatric, and/or hospital bills, and expenses for treatment for pain, suffering, emotional distress, and other injuries caused by the conduct of Defendants and each of them. General damages are also sought for emotional distress, grief, anger, fear, trepidation, and chagrin, in a sum according to proof and in excess of the minimum jurisdiction of this court as well as for the loss of the use of money, pre and post-judgment interest, litigation costs, attorneys' fees, and such other damages set out during trial.

**FIRST AMENDED COMPLAINT FOR DAMAGES**

91.    The aforementioned acts of said Defendants were willful, wanton, malicious, and oppressive and said misconduct shocks the conscience thereby justifying the awarding of exemplary and punitive damages as to all non-municipal Defendants.

### FOURTH CAUSE OF ACTION
### FOR NEGLIGENCE BY ALL PLAINTIFFS
### AGAINST ALL DEFENDANTS

92.    Each and every allegation set forth in the preceding paragraphs is incorporated herein by this reference with the same effect as if re-alleged herein.

93.    Plaintiffs bring this cause of action as a survival claim.

94.    In *Burden v. Snowden* (1992) 2 Cal.4th 556, 561, the California Supreme Court held police recruits are not peace officers and thus, not covered by Public Safety Officers Procedural Bill of Rights Act (POBRA) (Govt.C. 3300 et seq.).

95.     To "assure that stable relations are continued throughout the state and to further assure that effective services are provided to all people of the state, it is necessary that this chapter be applicable to all public safety officers, as defined in this section, wherever situated within the State of California." (Govt.C. 3301.)

96.    Active police officers "of any regularly organized police department having official recognition and full or partial support of the government of the county, city, town or district in which such police department is located," must be deemed employees of that entity for purposes of the workers' compensation law,

**FIRST AMENDED COMPLAINT FOR DAMAGES**

if the governing body of that entity has adopted a resolution so declaring. (Lab.C. 3362.).

97. Here, JON-MARQUES was not an employee of the City. Neither JON-MARQUES nor his parents received any worker's compensation or benefits afforded to employees.

98. Defendants had a duty of due care to protect recruits.

99. Defendants breached the duty of care which caused the damages and injuries alleged herein.

100. Defendants are negligent per se for violations of statutes, rules and laws.

101. As a direct, legal, and proximate result of the shooting, Plaintiffs have sustained pecuniary and non-pecuniary damages resulting from the loss of society, comfort, companionship, attention, services, and support of the decedent in an amount in excess of the jurisdictional limit of the Court and subject to proof at trial. As a further direct, legal and proximate result of the acts or omissions of the aforesaid Defendants as herein alleged, Plaintiffs have incurred special damages, including Recruit JON-MARQUES PSALMS's funeral and burial damages, in excess of the jurisdictional limit of this Court and subject to proof at trial. As a further legal, direct, and proximate result of the acts or omissions on the part of the Defendants, Plaintiffs have sustained pecuniary damages resulting from the loss of financial and household contributions that decedent could have reasonably been expected to provide had he not been killed.

**FIRST AMENDED COMPLAINT FOR DAMAGES**

## FIFTH CAUSE OF ACTION
## FOR MONELL LIABILITY
## BY PLAINTIFFS AGAINST DEFENDANT CITY

102.    Each and every allegation set forth in the preceding paragraphs is incorporated herein by this reference with the same effect as if re-alleged herein.

103.    This action is brought pursuant to 42 U.S.C. §1983 for violation of Plaintiffs' rights under the Fourteenth Amendments.

104.    Paul Yep is the Chief of Police and/or policy maker of the SFPD.

105.    Chief Yep exercised control and management over the City's Police Department and was the final policymakers for Defendants.

106.    As police chief, Yep promulgated policies wherein police officers and recruits were ordered and encouraged to engage in physical force against the other recruits.    Defendants implemented policies, procedures, and practices that deprived Plaintiffs' decedent of his rights under the laws of the United States and the United States Constitution.

107.    Defendants implemented an express policy, custom, or widespread practice of targeting people for excessive force, rather than engaging in constitutional policing and police training.  The Defendants had deliberate indifference to the violations of constitutional rights for people.

108.    At all relevant times herein, Plaintiffs suffered constitutional deprivations by Defendants implementing the unconstitutional policies of the Defendants.

**FIRST AMENDED COMPLAINT FOR DAMAGES**

**Page** 24

109. Defendants ratified the unconstitutional actions of subordinates by continually rewarding recruits and officers for unconstitutional conduct through awards, positive evaluations, promotions, and job offers.

110. At the time of these constitutional violations, Defendant City had policies in place, and had ratified customs and practices which permitted and encouraged their police officers to violate the U.S. Constitution.

111. Said policies, customs and practices also called for the City and its Police Department not to discipline, prosecute, or objectively or independently investigate known incidents and complaints of unconstitutional violations of the rights of individuals' under the Fourteenth Amendments to the U.S. Constitution. These violations were exacerbated by Defendants lack of properly training its officers in constitutional policing, including recruits in training exercises.

112. Defendant City was aware of and deliberately indifferent to a pervasive and widespread pattern and practice within the Polices Department to violate the rights of individuals under the Fourteenth Amendments to the U.S. Constitution. Said Defendants failed to take any reasonable measures to correct this pattern and practice and as a result ratified the actions, and Defendants have been deliberately indifferent to the civil rights violations which resulted in death to Recruit Psalms.

113. Said customs and practices called for said Defendants, by means of inaction and coverup, to encourage an atmosphere of lawlessness within the police department

**FIRST AMENDED COMPLAINT FOR DAMAGES**

and to encourage their police officers to believe that engaging in illegal activities was permissible, and that such conduct would be overlooked or would not result in any discipline for Defendant employees violating the civil rights of others demonstrating ratification of these customs and practices.

114. Said policies, customs, and practices of said Defendants and each of them evidenced a deliberate indifference to the violations of the constitutional rights of Plaintiffs.  This indifference was manifested by the failure to change, correct, revoke, or rescind or otherwise address said customs and practices in light of prior knowledge by said Defendants and their subordinate policymakers of indistinguishably similar incidents of unjustified, unlawful police academy activities.

115. Deliberate indifference is also evidenced by an absence of or by maintenance of an inadequate system of tort claims tracking and by maintaining an inadequate system of officer discipline and independent and objective investigation by the City and its Police Department which failed to identify and investigate instances of illegal conduct.

116. Other systemic deficiencies of said Defendants which indicated, and continue to indicate, a deliberate indifference to the violations of the civil rights by the officers of the Defendants towards plaintiffs include unjustified death and injuring of recruits.

**FIRST AMENDED COMPLAINT FOR DAMAGES**

117. Said defendants also maintained a system of grossly inadequate training pertaining to the lawful training of recruits.

118. As a direct and legal result of the Defendants actions, the Plaintiffs were harmed, and are entitled to economic and non-economic damages in excess of the minimum jurisdiction of this court, to attorneys' fees, litigation costs, fines, penalties, interest, and such other relief as the court deems just and proper.

WHEREFORE, Plaintiffs pray for the following:

1. Compensation for both economic and non-economic damages suffered and to be suffered;

2. Pain, suffering, emotional distress, survivor benefits, and all other wrongful death damages;

3. Punitive damages against individual defendants;

3. Legal and other expenses incurred by Plaintiffs;

4. Medical and hospital bills;

5. Litigation costs;

6. Attorneys' fees, as allowed by statute;

7. Interest; and

8. Any other relief or damages allowed by law, or statutes not set out above, and such further relief as the Court deems just and proper at conclusion of trial.

**FIRST AMENDED COMPLAINT FOR DAMAGES**

Dated: June 11, 2026                    Respectfully Submitted,
                                        Brad Gage Law
                                        A Professional Corporation

                                        By    */s/Milad Sadr*
                                              Bradley C. Gage
                                              Milad Sadr
                                              Sarah E. Gage
                                              Attorneys for Plaintiff

**FIRST AMENDED COMPLAINT FOR DAMAGES**