DAVID CHIU, State Bar #189542
City Attorney
JENNIFER E. CHOI, State Bar #184058
Chief Trial Deputy
LUCIA LI, State Bar #309355
Deputy City Attorney
Fox Plaza
1390 Market Street, Sixth Floor
San Francisco, California 94102-5408
Telephone:     (415) 554-4206
Facsimile:     (415) 554-3837
E-Mail:        lucia.li@sfcityatty.org

Attorneys for Defendants
CITY AND COUNTY OF SAN FRANCISCO
(Erroneously sued as City of San Francisco);
SAN FRANCISCO POLICE DEPARTMENT

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTINA PSALMS, and MARCUS PSALMS individually and as successors in interest to JON-MARQUES PSALMS, of which CHRISTINA PSALMS and MARCUS PSALMS are beneficiaries,<br><br>Plaintiffs,<br><br>vs.<br><br>CITY OF SAN FRANCISCO, SAN FRANCISCO POLICE DEPARTMENT, PAUL YEP, and DOES 1-100, inclusive,<br><br>Defendants. | Case No. 3:26-cv-03880 LB<br><br>**[PROPOSED] ORDER GRANTING DEFENDANTS CITY AND COUNTY OF SAN FRANCISCO, CHRISTOPHER CANNING, AND RAY CRUZ'S MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT**<br><br>Hearing Date:     August 20, 2026<br>Time:     9:30 a.m.<br>Place:     450 Golden Gate Ave<br>     15th Floor, Courtroom B<br>     San Francisco, CA<br><br>Trial Date:     Not Set |

[Proposed] Order
Case No. 3:26-cv-03880 LB

4897-0335-3789, v. 1

Presently before the Court is Defendants City and County of San Francisco, San Francsico Police Department, Christopher Canning, and Ray Cruz's Motion to Dismiss Plaintiffs' First Amended Complaint (Dkt. No. 17). Having reviewed the moving papers and opposition papers, and good cause appearing, Defendants' motion to dismiss is granted, as follows:

## INTRODUCTION

This action arises from the death of Jon-Marques Psalms ("Recruit Psalms"), a San Francisco police recruit who collapsed after a "Red Man" defensive tactics drill on August 20, 2025, at the police academy and died two days later. His parents, Christina Psalms and Marcus Psalms ("Plaintiffs"), sue Defendants City and County of San Francisco (the "City"), the San Francisco Police Department ("SFPD"), Christopher Canning, Ray Cruz, and Doe defendants for civil rights violations and state law claims. Although the circumstances are tragic, Plaintiffs do not, and cannot, state any entitlement for relief through civil litigation.

The First Amended Complaint (Dkt. No. 17, "FAC") is DISMISSED in its entirety. The FAC fails to state a viable federal claim against any defendant. There is no cognizable Fourteenth Amendment claim because there is no substantive due process right to any minimum workplace safety or training and defendants' alleged failures do not constitute a cognizable state-created danger. The familial interference claim also fails because there was no constitutional violation against Recruit Psalms nor was there official conduct that shocks the conscience. And even if constitutional interests might be implicated, the named defendants are entitled to qualified immunity because no clearly established law in August 2025 placed all reasonable officials on notice that their conduct was unlawful. Without a predicate constitutional violation, direct liability against the City under *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 691 (1978) necessarily fails. Additionally, Plaintiffs' state claims are barred by California's workers' compensation exclusivity rule. Even assuming exclusivity does not bar the claims, Plaintiffs fail to plead sufficient facts to state a negligence or battery claim. Should any claims survive, SFPD should be dismissed as a defendant because it is duplicative of the City.

[Proposed] Order
Case No. 3:26-cv-03880 LB

4897-0335-3789, v. 1

Because the FAC does not plausibly establish that Plaintiffs are entitled to relief on any claim, and because Plaintiff already had opportunity to amend, the Court hereby DISMISS the FAC without leave to amend.

## PROCEDURAL BACKGROUND

On March 17, 2026, Plaintiffs commenced suit against the City and SFPD by filing a complaint alleging twelve causes of action, including three claims pursuant to 42 USC § 1983, in the San Francisco Superior Court. After being served, the City and SFPD removed the action from state court to this Court. (Dkt. No. 1.) On May 29, 2026, the City and SFPD moved to dismiss Plaintiffs' Complaint. (Dkt. No. 10.) In response, Plaintiffs filed their First Amended Complaint, naming Christopher Canning and Ray Cruz as additional defendants. (Dkt. No. 17.)

Defendants City, SFPD, Christopher Canning, and Ray Cruz (collectively, "Defendants") now move to dismiss the FAC and all claims against them.

## FACTUAL BACKGROUND[1]

Plaintiffs Christina Psalms and Marcus Psalms ("Plaintiffs"), parents of Jon-Marques Psalms ("Recruit Psalms"), bring suit on behalf of themselves and as successors in interest of Jon-Marques Psalms. (Dkt. No. 17, ("FAC"), ¶¶ 21–23.) They allege the following:

**I.      Recruit Psalms Participated in SFPD Academy's Exercise and Suffered A Medical Emergency.**

Recruit Psalms joined the SFPD police academy on May 5, 2025. (FAC ¶ 24.) Although Plaintiffs allege that Recruit Psalms "was not an employee of the City" (FAC ¶ 97), judicially noticeable records and information confirm that recruits of the Academy are hired and salaried employees of the City and entitled to Civil Service and union protections. (RJN Ex. A [Q002 Police Officer Job Description]; RJN Ex. B [SFPD Recruitment Website]; RJN Ex. C [S.F.P.O.A. Mem. of Understanding]).

---

[1] For purposes of this motion, Defendants provide the facts according to the FAC. Defendants dispute many of these facts.

[Proposed] Order
Case No. 3:26-cv-03880 LB

4897-0335-3789, v. 1

Recruit Psalms had "no known medical conditions that would have impaired his ability to safely participate in academy training" and "was in excellent physical health." (FAC ¶ 24.) Defendants did not discover any impairing medical conditions. (*Id.*)

On August 20, 2025, Recruit Psalms participated in the "Red Man" training exercise, which involved "strenuous calisthenics" and "a simulated combat scenario." (FAC ¶ 25.) After completing the exercise, Recruit Psalms was "lying face down." (FAC ¶ 27; compare Compl. (Dkt No. 1-1) ¶ 28 (alleging Psalms was conscious and "able to state his name and location").) Recruit Psalms was transported to UCSF Medical Center. (FAC ¶ 28.) Despite medical intervention, Recruit Psalms died on August 22, 2025. (FAC ¶ 48.)

Recruit Psalms died as a result of post-exertional secondary rhabdomyolysis and cerebral hypoxic-ischemic brain injury due to post-exertional cardiac arrhythmogenic collapse/syncope due to congenital cardiomyopathy and channelopathy. (FAC ¶ 44.) Plaintiffs claim "high-intensity training" "combined with [his] prevailing genotype" "triggered cardiogenic hypoxemia and rhabdomyolysis." (FAC ¶¶ 51.)

## II.    Alleged Failures and Concealment.

Plaintiffs attribute the incident to deficient "medical monitoring" and an improperly "performed and supervised" Red Man exercise. (FAC ¶ 52.) According to Plaintiffs, Defendants had "a duty to check for any potential medical problems" and "failed to check or to discover any such conditions." (FAC ¶ 24.) Plaintiffs claim that instructors "failed to properly monitor and protect the recruits from injury" and "failed to ensure the recruits were properly hydrated." (FAC ¶ 26; compare Compl. ¶ 24 (alleging other "police officers" and "a nurse" were present to monitor "visual and … verbal responses").) Plaintiffs claim that "[d]espite the known risks of exertional rhabdomyolysis during extreme physical training," Defendants failed to conduct "appropriate medical screening or laboratory testing, including creatine kinase (CK) testing, to assess muscle breakdown or internal distress." (*Id.*) Plaintiffs claim that Defendants failed to "determine a health baseline" and failed to "measure" or "medically monitor" vital signs during the exercise. (FAC ¶¶ 36, 38.) Plaintiffs also claim that Defendants failed to train on "the use of electronic monitoring devices" that "monitor the vital signs of the recruits during their intense exercise." (FAC ¶ 41.)

[Proposed] Order
Case No. 3:26-cv-03880 LB

4897-0335-3789, v. 1

Plaintiffs allege, according to "information and belief," that Recruit Pslams was "intentionally" "inflicted with a head injury by Doe 4" during the drill. (FAC ¶ 25.)

According to Plaintiffs, "drills intended to teach defensive tactics" have been previously linked to injuries. (FAC ¶ 29.) They allege that Massachusetts "banned" the use of "Red Man" drills (FAC ¶ 30); a Santa Clara County Sheriff's Office recruit died after a "Red Man" drill in 2020 (*id.* ¶ 31); and the Texas Game Warden Academy's "four-on-one combat drills" resulted in injuries (*id.* ¶ 32). Plaintiffs conclude that the "Red Man" drill's "hazards" are well known and Defendants "intentionally refused" to remedy such unspecified hazards. (FAC ¶ 35.)

Plaintiffs points to Title 8 of the California Code of Regulations ("CCR"), sections 3203(a)(4) and (6) as requiring an employer to "identify, evaluate, and correct workplace hazards." (FAC ¶ 33.) Plaintiffs claim that §3203(a)(7) requires "the employer to provide training and instructions." (FAC ¶ 41.) Plaintiffs also allege that section §1070 "requires properly trained instructors and a sufficient number of instructors to protect recruits and others" (FAC ¶ 34[2].)

Lastly, the FAC alleges the following constitutes concealment as a part of a "code of silence." (FAC ¶¶ 42, 46.) Despite being immediately notified that Recruit Psalms "was being evaluated for dehydration following intensive calisthenics," the FAC alleges that Plaintiffs were not informed that Recruit Psalms was found unconscious, sustained a head injury, or that he was found face down on the ground. (*Id.*) Christina Psalms first learned that Recruit Psalms had rhabdomyolysis and a brain bleed once she arrived at the hospital later that day. (*Id.* ¶ 43.) And she first heard that Recruit Psalms was unconscious at the academy "the next day" when a doctor asked her for more information. (FAC ¶ 46.)

## LEGAL STANDARD

A court may dismiss a complaint under Federal Rule of Civil Procedure 12(b)(6) for "failure to state a claim upon which relief can be granted." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 552 (2007). A pleading with mere "labels and conclusions," or "a formulaic recitation of the elements of a cause of action will not do." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). To survive

---

[2] The FAC incorrectly characterizes this statute and the allegation should be stricken. *See* Cal. Code Regs. tit. 8, §1070 (entitled "Order Regulating Wages, Hours, and Working Conditions in the Mercantile Industry").

dismissal, a complaint must allege "enough facts to state a claim to relief that is plausible on its face," which requires "more than a sheer possibility that a defendant has acted unlawfully." *Id*. This determination requires the court to conduct a "context-specific" inquiry and "draw on its judicial experience and common sense." *Id.* at 663–64 (quoting *Twombly* at 556). Factual allegations that are taken as true must plausibly suggest entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation. *Id.* But courts must disregard "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Id.*; *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

ARGUMENT

## I.    The FAC Fails to State Any 42 U.S.C. § 1983 Violation (Claims 2, 3, 5).

The FAC fails to state any constitutional violation by any individual defendant, and it fails to state *Monell* liability against the City.

### A.    The FAC Fails to Plausibly Plead Individual Participation or Causation.

The FAC fails to allege any Defendant's personal participation and cannot state a causal nexus between their conduct and an alleged constitutional violation. A plaintiff in a §1983 action must establish that the defendant's conduct was the actionable cause of the claimed injury, which requires both causation in fact and proximate cause. *See Chaudhry v. Aragon*, 68 F.4th 1161, 1169–70 & nn.11-12 (9th Cir. 2023). The court "must take a very individualized approach which accounts for the duties, discretion, and means of each defendant." *Leer v. Murphy*, 844 F.2d 628, 633-34 (9th Cir. 1988). An officer is not liable merely "because of his membership in a group without a showing of individual participation in the unlawful conduct." *Jones v. Williams*, 297 F.3d 930, 935 (9th Cir. 2002) (citing *Chuman v. right*, 76 F.3d 292, 294 (9th Cir. 1996)).

"[S]upervisory officials are not liable for actions of subordinates on any theory of vicarious liability." *Crowley v. Bannister*, 734 F.3d 967, 977 (9th Cir. 2013); *Hansen v. Black*, 885 F.2d 642, 645–46 (9th Cir. 1989). Rather, a supervisor may be liable only if he is personally involved in the constitutional deprivation, or there is a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation. *Crowley*, 734 F.3d at 977; *Hansen*, 885 F.2d at 646. A sufficient causal connection between a supervisor's conduct and a constitutional violation can be

shown by: (1) the supervisor sets in motion a series of acts by others, or knowingly refuses to terminate a series of acts by others, that the supervisor knew or reasonably should know will cause others to inflict a constitutional injury; (2) the supervisor's own culpable action or inaction in the training, supervision, or control of his subordinates; (3) the supervisor's acquiescence in or ratification/condoning of the constitutional deprivation; or (4) conduct by the supervisor that showed a reckless or callous indifference to the rights of others. *See Starr v. Baca*, 652 F.3d at 1207.

The FAC's allegations that Captain Canning and Lieutenant Cruz "oversaw the SFPD Police Academy, including supervisors, training, and safety" (FAC ¶ 66–67) or that Doe 4 was a "trainer" (*id.* ¶ 68) do not make them liable for another's wrong. That they were "managerial level or supervisory level employees of the SFPD" or "directed their subordinates" (FAC ¶¶ 5–6, 74–83) is insufficient to impose liability. Other than their supervisory role, the FAC contains no facts of any defendant's involvement with a constitutional deprivation by a subordinate. In other words, the FAC does not state any predicate subordinate's constitutional violation to which any supervisory liability may attach; nor does it contain any facts to support an inference that Captain Canning or Lieutenant Cruz's conduct *caused* that constitutional violation. Any individual or supervisory liability claim must be dismissed.

The FAC's vague allegations fail to give rise to individual or supervisory liability and do not allege "enough facts to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678. The state-created danger claim (Claim 2) and deprivation of familial relations claim (Claim 3) are both DISMISSED on this basis.

### B.    The FAC Fails to State a State-Created Danger Claim (Claim 2).

The state-created danger theory in Claim 2 fails as a matter of law. The state-created danger doctrine arises from the Due Process Clause of the Fourteenth Amendment. The Due Process Clause is a *limitation* on state action rather than a "guarantee of certain *minimum* levels of safety and security." *Murguia v. Langdon*, 61 F.4th 1096, 1106 (9th Cir. 2023) (emphasis in original); *see also DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 194–95 (1989)). The general rule is that "a state actor is not liable under the Due Process Clause 'for its omissions.' " *Pauluk v. Savage*, 836 F.3d 1117, 1122 (9th Cir. 2016) (quoting *Munger v. City of Glasgow Police Dep't*, 227 F.3d 1082, 1086

(9th Cir. 2000)). Even failure to comply with a legally required duty, without more, does not give rise to a substantive due process claim. *Murguia*, 61 F.4th at 1108.

Under the state-created danger doctrine, state actors may be liable "for their roles in creating or exposing individuals to danger they otherwise would not have faced." *Pauluk*, 836 F.3d at 1122 (internal citation omitted). State employers have no constitutional duty to provide their employees with minimum workplace safety and security, *see Collins v. City of Harker Heights*, *Tex.*, 503 U.S. 115, 126 (1992); but, in the Ninth Circuit, the state-created-danger doctrine may hold a defendant liable if he affirmatively, and with deliberate indifference, creates or exposes his employee to a particularized danger. *Polanco v. Diaz*, 76 F.4th 918, 926 (9th Cir. 2023). To hold a defendant liable under the state-created danger exception, a plaintiff must prove a defendant's "affirmative conduct" exposed the plaintiff to a foreseeable danger that he would not otherwise have faced and that defendant acted "with 'deliberate indifference' to a 'known or obvious danger.'" *Martinez v. High*, 91 F.4th 1022, 1028 (9th Cir. 2024).

The FAC fails to satisfy any element. The FAC's liability theory hinges on alleged failures to determine a health baseline (FAC ¶ 71), monitor vital signs (*id.* ¶ 72), failure to train on electronic monitoring devices (*id.* ¶ 73), failure to ensure hydration, or other "fail[ure] to properly monitor and protect the recruits" (*id.* ¶ 26). These omissions do not satisfy the "affirmative conduct" requirement and did not place Recruit Psalms in a "worse position" than he would have been in "had [the defendant] not acted at all." *Pauluk*, 836 F.3d at 1124–25. A defendant does not "create" a danger by failing to discover one.

The FAC also does not plead an actual, particularized, or foreseeable danger. *Pauluk*, 836 F.3d at 1125. The FAC claims that the danger extended to all "SFPD police academy recruits" (FAC ¶ 74) not just Recruit Psalms. In fact, exertional risks from the exercise are generalized. These risks exist independent of medical monitoring and are not *caused* by failing to discover an underlying medical condition. The FAC also does not allege that the August 20 iteration of the exercise differed from any other, that Recruit Psalms was singled out, or that any defendant directed a known hazard at him rather than administering a uniform curriculum. Indeed, the risk posed by Recruit Psalms' undiagnosed congenital condition and prevailing genotype could not have been a danger defendant created or

[Proposed] Order
Case No. 3:26-cv-03880 LB

"directed at" him, because even Plaintiffs admit, no one knew the risk existed (FAC ¶ 24). For these same reasons, Recruit Psalms' death was unforeseeable—no defendant knew of Recruit Psalms' medical conditions nor were there any prior SFPD recruit death after the "Red Man" exercise with a similar mechanism of death.

The FAC also lacks facts to satisfy the "deliberate indifference" requirement. Deliberate indifference is a subjective standard that requires a plaintiff to allege facts supporting an inference that the defendant both recognized an unreasonable risk and actually intended to expose the plaintiff to such risks without regard to the consequences to plaintiff. *Murguia*, 61 F.4th at 1111; *see also Polanco v. Diaz*, 76 F.4th at 928. It requires a "culpable mental state" more than "gross negligence." *Pauluk*, 836 F.3d at 1125. Setting aside conclusory allegations and bare recitals of the elements, the FAC lacks sufficient facts that plausibly state that any defendant had knowledge of, and intended to expose Recruit Psalms, to an unreasonable risk. Allegations that other "defensive tactics" drills involved injuries do not suggest that defendants' allegedly inadequate medical screening or monitoring here posed an actual, unreasonable risk; or that any defendant knew of and ignored that risk. In fact, everyone believed Recruit Psalms was in "excellent health" and "had no known medical conditions that would have impaired his ability to safely participate in training." (FAC ¶ 24.) Plaintiffs also admit that during the exercise, safety monitors as well as on-site medical staff were present to assess the recruits (Compl. ¶ 24 ("Defendants had police officers monitoring and even a nurse present… [who] relied… on visual and… verbal responses"). These existing procedures and precautions show that defendants had not intended to expose Recruit Psalms to an unreasonable risk. *See Patel*, 648 F.3d at 976 (holding that a teacher's "lapse in judgment" did not rise to the level of deliberate indifference because she was "fairly active" in attempting to protect the plaintiff). Notably, Plaintiffs do not—and cannot—allege that any defendant knew of any prior serious injury or death from the SFPD's version of the "Red Man" exercise at the Academy, that the Academy's medical screening or monitoring procedure *created* a serious danger of death, or that the Academy's process was inconsistent with state-wide law enforcement training standards established by the California Commission on Peace Officer Standasd and Training (POST). The FAC falls short in alleging any defendant had a sufficiently culpable mental state that constitutes deliberate indifference.

[Proposed] Order
Case No. 3:26-cv-03880 LB

4897-0335-3789, v. 1

For these reasons, the state-create danger claim is DISMISSED.

### C.    The FAC Fails to State a Deprivation of Familial Relations Claim (Claim 3).

The FAC also fails to assert a claim based on Plaintiffs' Fourteenth Amendment liberty interest in the companionship and society of their adult son. In the Ninth Circuit, an adult decedent's parents have the right to assert a substantive due process claim for the deprivation of the companionship of their child. *Sinclair v. City of Seattle*, 61 F.4th 674, 678–79 (9th Cir. 2023). But only "[o]fficial conduct that 'shocks the conscience' in depriving parents of that interest is cognizable as a violation of due process." *Jones v. Las Vegas Metro. Police Dep't*, 873 F.3d 1123, 1132–33 (9th Cir. 2017) (alterations in original) (quoting *Wilkinson v. Torres*, 610 F.3d 546, 554 (9th Cir. 2010)). The FAC fails to assert conscience-shocking conduct that *caused* the injury. The FAC states mere conclusions that Defendants "acted with deliberate indifference to the constitutional rights of Christina and Marcus" Psalms "with purpose to harm unrelated to and unjustified by any legitimate law enforcement objective." (FAC ¶ 88.) This claim is based on the alleged deprivation of companionship and society of their son. (FAC ¶ 86.) Though pleaded as a direct claim by the Plaintiffs, this claim can only be understood as derivative of the state-created danger theory in Claim 2 (*Sinclair*, 61 F.4th at 679–80) and thus fails for the same reasons. The FAC's factually-devoid legal conclusions do not plausibly plead any constitutional injury or conduct that *caused* a constitutional injury, let alone conduct that shocks the conscience. This claim is DISMISSED.

### D.    Qualified Immunity Applies.

Police officers and officials are not liable under §1983 "unless (1) they violated a federal statutory or constitutional right, and (2) the unlawfulness of their conduct was 'clearly established at the time'" (*Dist. of Columbia v. Wesby*, 583 U.S. 48, 62–63 (2018)); courts may resolve a claim on either prong of the qualified immunity analysis (*Pearson v. Callahan*, 555 U.S. 223, 236 (2009)). Qualified immunity "attaches when an official's conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Kisela v. Hughes*, 584 U.S. 100, 104 (2018) (quoting *White v. Pauly*, 580 U.S. 73, 78–79 (2017) (per curiam)) (alterations and internal quotation marks omitted). The clearly-established inquiry must be undertaken "in light of the specific context of the case, not as a broad general proposition" and existing precedent must place the

constitutional question "beyond debate." *Mullenix v. Luna*, 577 U.S. 7, 12 (2015) (per curiam); *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011). Plaintiffs bear the burden of identifying such precedent. *Isayeva v. Sacramento Sheriff's Dep't*, 872 F.3d 938, 946 (9th Cir. 2017). Qualified immunity "protects all but the plainly incompetent or those who knowingly violate the law." *White v. Pauly*, 580 U.S. at 79 (internal citation and quotations omitted).

There was no constitutional violation as stated above. But even if there was a plausible violation, no precedent placed it beyond debate in August 2025 that conducting a sanctioned academy defensive-tactics drill without medical pre-screening or electronic vital-sign monitoring violates the Fourteenth Amendment. There is no such Supreme Court or Ninth Circuit precedent. This Circuit's state-created danger cases contend with no analogous scenario. None involved police training; none involved an unknown medical condition; and none holds that medical screening or monitoring *omissions* constitute affirmative conduct that constitutes a state-created danger. Rather, courts that have confronted police training injuries have consistently rejected claims that the police-training context implicated constitutional interests. *Cf. Kennedy v. City of Arlington*, 165 F.4th 937, 944 (5th Cir. 2026) (dismissing Fourth Amendment and Fourteenth Amendment due process claims based on a police trainee's death after a combative training exercise); *Feirson v. District of Columbia*, 506 F.3d 1063, 1068 (D.C. Cir. 2007) (dismissing Fourteenth Amendment substantive due process and Fourth Amendment claims based on injury from a mandatory baton attack training); *Fournier v. Reardon*, 160 F.3d 754, 757 (1st Cir. 1998) (dismissing Fourth Amendment and due process claims based on injury from being restrained during police training); *Mallar v. City of Adelanto*, No. 11-cv-02549 GAF (JEMx), 2013 WL 8148647, at *6 (C.D. Cal. July 24, 2013) (dismissing Fourth Amendment and *Monell* claims based on injury from a mock hostage training). At bottom, there was no existing precedent that placed the relevant legal question confronted by the defendants "beyond debate." *Kisela*, 584 U.S. at 104. Plaintiffs' claims cannot survive either prong of the qualified immunity analysis. They are DISMISSED.

### E.    The FAC Fails to State a *Monell* Claim (Claim 5).

Plaintiffs do not allege a plausible *Monell* theory against the City. A government entity may not be held liable under 42 U.S.C. §1983, unless a policy, practice, or custom of the entity can be

[Proposed] Order
Case No. 3:26-cv-03880 LB

4897-0335-3789, v. 1

shown to be a moving force behind a violation of constitutional rights. *Monell*, 436 U.S. at 691. To establish *Monell* liability, Plaintiffs must prove (1) that they possessed a constitutional right of which they were deprived; (2) that the municipality had a policy; (3) that this policy amounts to deliberate indifference to their constitutional right; and, (4) that the policy is the moving force behind the constitutional violation. *Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011). Conclusory allegations of widespread unconstitutional practices are insufficient. *AE ex rel. Hernandez v. Cnty. of Tulare*, 666 F.3d 631, 637 (9th Cir. 2012).

The FAC's failure to plead a predicate constitutional violation (as discussed above) is fatal. *City of Los Angeles v. Heller*, 475 U.S. 796 (1986) (no *Monell* liability against an entity when there is no constitutional injury). If a plaintiff suffered no constitutional injury at the hands of a public employee, the fact that the department regulations might have authorized the misconduct is beside the point. *Id.* at 799. On this basis alone, the Court should dismiss the *Monell* claim.

Even if an underlying violation occurred, Plaintiffs fail to plead sufficient facts to support any *Monell* theory. Setting aside conclusory assertions, the FAC does not plausibly allege a municipal policy or improper "practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy." *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996), holding modified by *Navarro v. Block*, 250 F.3d 729 (9th Cir. 2001). Liability for an improper custom may not be predicated on isolated or sporadic incidents. *Id.* The FAC's assertions about out-of-state practices or other injuries do not support any logical inference that SFPD's procedures or protocols were improper. The FAC's single occurrence of purportedly unconstitutional action against a SFPD recruit cannot establish a municipal custom. *Meehan v. Los Angeles Cnty.*, 856 F.2d 102 (9th Cir. 1988) (two incidents not sufficient to establish custom); *Davis v. Ellensburg,* 869 F.2d 1230 (9th Cir. 1989) (manner of one arrest insufficient to establish policy).

Nor have Plaintiffs alleged that any official with final policy-making authority approved a specific wrongful conduct and the basis for it to constitute ratification. *Christie v. Iopa*, 176 F.3d 1231, 1239 (9th Cir. 1999) (to plausibly plead ratification the plaintiff must allege facts that show that "the authorized policymakers approve a subordinate's decision and the basis for it"); *Lytle v. Carl*, 382

F.3d 978, 987 (9th Cir. 2004) ("A mere failure to overrule a subordinate's actions, without more, is insufficient to support a §1983 claim.").

Lastly, Plaintiffs have also not made any factual allegation that demonstrates that the City was "deliberately indifferent" to "a particular omission" in training its Academy employees that would cause them to violate recruits' constitutional rights while at the Academy. *City of Canton, Ohio v. Harris*, 489 U.S. 378, 389 (1989); *Flores v. Cnty. of Los Angeles*, 758 F.3d 1154, 1158 (9th Cir. 2014) (emphasis added) (specific shortcomings in the training required). "A pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train." *Connick v. Thompson*, 563 U.S. 51, 62 (2011). Indeed, "[a] municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Id.* at 61 (quoting *Oklahoma City v. Tuttle*, 471 U.S. 808, 822–23 (1985)). The narrow single-incident exception also fails because the FAC pleads Recruit Psalms died from an undiagnosed congenital cardiac condition triggered by exercise and his "prevailing genotype" (FAC ¶¶ 24, 44, 51), so no obvious training omission made his death a "highly predictable consequence" of a specific training deficiency. *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 409 (1997).

The FAC's conclusory recitations are insufficient. The *Monell* claim are DISMISSED on every theory.

## II.    California's Workers' Compensation Exclusivity Bars the Battery and Negligence Claims (Claims 1, 4).

For state-law claims, workers' compensation is the exclusive remedy for injuries sustained by "employees" arising out of employment and it extends robust limitations on civil tort liability. Cal. Lab. Code §§3600, 3602(a). Exclusivity bars Plaintiffs' state law actions here, because (1) SFPD academy recruits, such as Recruit Psalms, are employees under the Workers' Compensation Act; (2) the injuries arose during that employment; and (3) no recognized statutory exception to the exclusivity rule applies. Because Plaintiffs' derivative tort claims stand or fall with Recruit Psalms' own claims, the workers' compensation bar extends to Plaintiffs' state law causes of action. They are DISMISSED.

### A.    Workers' Compensation Is the Exclusive Remedy for Industrial Injury.

Under California's Workers' Compensation Act, Cal. Lab. Code §3350 *et seq*., the right to receive workers' compensation benefits is the exclusive remedy of an employee or his dependents against an employer for an injury arising out of and in the course of employment. Labor Code §3600(a) provides that the employer's compensation obligation, "in lieu of any other liability whatsoever to any person," "shall, without regard to negligence, exist against an employer for any injury sustained by his or her employees arising out of and in the course of the employment and for the death of any employee if the injury proximately causes death," subject to the conditions of compensation. Cal. Lab. Code §3600(a). Section 3602(a) makes that remedy exclusive: "Where the conditions of compensation set forth in Section 3600 concur, the right to recover such compensation is . . . the sole and exclusive remedy of the employee or his or her dependents against the employer." *Id.* §3602(a). Section 3601 likewise extinguishes co-employee tort liability for injuries arising in the scope of employment. *Id.* §3601. The exclusivity bar applies automatically and does not depend on whether the employee or their dependents received or pursued benefits. That bar also reaches the claims against Captain Canning, Lieutenant Cruz, and Doe 4, each of whom is alleged to have acted "within the course and scope of his employment" as Recruit Psalms' co-employee. (FAC ¶¶ 5–6, 10); Cal. Lab. Code §3601(a).

The California Supreme Court liberally construes the Act "in favor of awarding work[ers'] compensation, not in permitting civil litigation." *Arriaga v. Cnty. of Alameda*, 9 Cal.4th 1055, 1065 (1995); *see also Machado v. Hulsman*, 119 Cal.App.3d 453, 455–56 (1981) (Act must "be liberally construed in favor of the application of ... benefits [citations] even where it might be to the advantage of a particular plaintiff to avoid them and seek a remedy at law"). The Supreme Court explained that the policy underpinning for exclusivity is a presumed "compensation bargain," pursuant to which the employer assumes liability for industrial injury regardless of fault in exchange for limits on the amount of liability. *Shoemaker v. Myers*, 52 Cal.3d 1, 16 (1990). The employee benefits from swift and certain payment to relieve the injury without having to prove fault but, in exchange, gives up the wider range of damages potentially available in tort. *Id*. The exclusive provision gives efficacy to the "compensation bargain." *Id.* This bargain runs not only to the employee but also to the employee's

[Proposed] Order
Case No. 3:26-cv-03880 LB

4897-0335-3789, v. 1

dependents and heirs. *Snyder v. Michael's Stores, Inc.*, 16 Cal.4th 991, 996–97 (1997) (collecting cases); *e.g.*, *LeFiell Mfg. Co. v. Superior Ct.*, 55 Cal.4th 275, 284 (2012) (exclusivity bars suit against employers by nondependent parents of an employee for the employee's wrongful death); *Treat v. Los Angeles Gas & Electric Corp.*, 82 Cal.App. 610, 615–16 (1927) (same).

**B.      Workers' Compensation is the Exclusive Remedy for Recruit Psalms' Injury.**

The Court can resolve the exclusivity question as a matter of law on the face of the pleadings. When a complaint alleges facts indicating that the Act applies, the complaint is subject to dismissal unless it states additional facts that negate application of the exclusive remedy rule. *Arriaga*, 9 Cal.4th at 1060 (internal citations omitted). Where, as here, the operative facts are fixed by the FAC—Recruit Psalms enrolled at the Academy, trained under the Academy's direction and control, and suffered medical distress after a sanctioned training—employee status under Cal. Lab. Code §3351 is a question of law.

"Employee" is broadly defined as "every person in the service of an employer under any appointment or contract of hire or apprenticeship, express or implied, oral or written, whether lawfully or unlawfully employed," and expressly includes "[a]ll elected and appointed paid public officers." Cal. Lab. Code §3351(b). As the Supreme Court explains: "The Act intends comprehensive coverage of injuries in employment. It accomplishes this goal by defining 'employment' broadly in terms of 'service to an employer' and by including a general presumption that any person 'in service to another' is a covered 'employee.'" *Arriaga*, 9 Cal.4th at 1061 (internal citation and quotations omitted); *see also* Cal. Lab. Code §3357 ("Any person rendering service for another, other than as an independent contractor, or unless expressly excluded herein, is presumed to be an employee.")

In the recruit training context alleged in the FAC, Recruit Psalms was an employee within the meaning of Act and exclusivity attaches. Recruit Psalms joined the Academy and participated in the Red Man exercise as part of structured Academy training. (FAC ¶¶ 24–25.) The Court need not accept as true Plaintiffs' factually devoid (and incorrect) assertion that Academy recruits are not City employees. (FAC ¶ 97.) The FAC's assertions about the Public Safety Officers Procedural Bill of Rights Act (POBRA) (FAC ¶ 94–95) are irrelevant and do not negate exclusivity under the Workers'

Compensation Act.[3] Irrelevant and misleading assertions about other statutory schemes do not negate the workers' compensation exclusivity bar. In fact, judicially noticeable records establish that police recruits are formally employed by the City. Published records make clear: City police recruits are hired into Class Q-2 (Q002) "Police Officer," the "entry level position for the sworn ranks in the Police Department,"  and are "required to successfully complete a twenty six (26) week P.O.S.T. Basic Course Police Academy" before assignment to a district station, with a starting salary of $119,262 per year. (*See* RJN Exs. A, B, C). Recruits are designated City Disaster Service Workers under statute and are required to take the loyalty oath. (RJN Ex. A); *see also* Cal. Gov. Code §3100 (declaring all public employees disaster service workers). Also, Q-2 officers are covered employees under the labor agreement between the San Francisco Police Officer's Association and the City. (RJN Ex. C.) In short, San Francisco Police Department recruits are City employees.

But even assuming there was no formal employment contract, Recruit Psalms was an "employee" within the meaning of California's workers' compensation system. Cal. Lab. Code §3351; *see Arriaga*, 9 Cal.4th at 1061 (general presumption that any person 'in service to another' is a covered 'employee.'"). For example, the California Supreme Court extended coverage to a city job applicant injured as part of a "tryout" competition even though he "was concededly not an 'employee' of the city in a strict, contractual sense" at the time of the injury. *Laeng v. Workmen's Comp. Appeals Bd.*, 6 Cal.3d 771, 774 (1972). The *Laeng* Court found the City received benefit from the applicant because his "efforts permit[ted] the employer to select workers who are likely to be better suited for the available position"; the applicant was "in the service of" the employer because he subjected himself to the employer's control and the employer assumed responsibility in directing the applicant's activities during the tryout; and that the applicant "incurred his injury while undertaking a 'special

---

[3] POBRA has no applicability to the issue of workers' compensation or exclusivity. Worker's Compensation Act coverage and exclusivity extend far broader than POBRA's narrow "peace officer" definition. *Burden v. Snowden*, 2 Cal.4th 556 (1992) narrowly holds that civilian recruits are not covered by POBRA and does not analyze California Workers' Compensation at all. *See also*, Cal. Gov. Code §3301 (specifying that POBRA applies to "public safety officers," defined as specified "peace officers" under the Penal Code). Whereas POBRA is a labor relations statute that provides procedural protections for police officers during administrative and disciplinary actions initiated by their employers, *Van Winkle v. Cnty. of Ventura*, 158 Cal.App.4th 492, 497–98 (2007), the California Workers' Compensation scheme and exclusivity bar contemplates remedies for industrial injuries, as applicable here.

risk' of employment." *Id.*, at 781-83. Therefore, he qualified as an "employee" "in light of ... the [A]ct's purpose of protecting individuals from any special risks inherent in employment...." *Id.* at 782. These factors are dispositive even when there is no formal contract of employment or no compensation. *See, e.g., Cnty. of Los Angeles v. Workers' Comp. Appeals Bd.*, 30 Cal.3d 391, 398–99 (1981) (A worker was an "employee" under the Act even though he was a "workfare" recipient where the County required the plaintiff to work in exchange for general assistance.); *Arriaga*, 9 Cal.4th at 1062 (A person convicted of a crime, but not incarcerated, who performs community service in lieu of paying a fine is an "employee" within the meaning of the Act and exclusivity bars suit.).

The exclusivity bar is clear. Recruit Psalms was an employee because his participation benefited the City in training and selecting officers; he subjected himself to the City's control, the City exerted control by directing the training, and the injury occurred when he undertook a "special risk" of that training. The injury was caused[4] by his employment because it occurred during a structured training exercise that was a City-directed component of the SFPD Academy curriculum, conducted on Academy premises during scheduled training hours. Cal. Lab. Code §3600(a)(3); *Vaught v. State of California*, 157 Cal.App.4th 1538, 1544–45 (2007) ("Course of employment, for purposes of section 3600, subdivision (a), refers to the time, place and circumstances attending the injury. . . . An employee is in the course of employment when the employee does those reasonable things that his or her employment contract expressly or impliedly permits the employee to do." (citations omitted)).

Recruit Psalms was an employee acting in the course of his employment when the incident occurred, and worker's compensation is the exclusive remedy for his injury. Because courts apply the exclusivity bar with breadth (*Shoemaker*, 52 Cal.3d at 16), exclusivity bars Plaintiffs' claims. The exclusivity bar cannot be cured by amendment and leave to amend should be denied.

---

[4] As used here, "cause[d]" refers to "a causal link to employment" contemplated by the Act. "[S]ection 3600 provides a workers' compensation remedy for an injury linked in some causal fashion to employment. This causation requirement differs markedly from ordinary tort principles, in that all that is required is that the employment be one of the contributing causes without which the injury would not have occurred." See also, *King v. CompPartners, Inc.*, 5 Cal.5th 1039, 1052 (2018)**Error! Bookmark not defined.** (cleaned up). Defendants do not concede that the Red Man exercise or Academy training is the legal cause of Recruit Psalms' injury or death.

[Proposed] Order
Case No. 3:26-cv-03880 LB

4897-0335-3789, v. 1

## C.    No Exception to Exclusivity Applies.

"An employee who suffers an injury in the course of his employment may recover damages in an action at law only if he comes within certain exceptions to the workers' compensation law." *Foster v. Xerox Corp.*, 40 Cal.3d 306, 308 (1985). The FAC does not plausibly plead any exception to exclusivity. *Iqbal,* 556 U.S. 662; *see also Cole v. Fair Oaks Fire Protection Dist.*, 43 Cal.3d 148, 160 (1987) (bare characterizations of conduct as outrageous, unfair, intentional or as outside the scope of employment are insufficient).

The "willful physical assault" exception does not apply. Cal. Lab. Code §3602(b)(1) permits civil action where "the employee's injury or death is proximately caused by a willful physical assault by the employer." Section 3602(b)(1) requires proof that the *employer* "acted deliberately with the specific intent to injure the employee." *Arendell v. Auto Parts Club, Inc*., 29 Cal.App.4th 1261, 1262 (1994) (internal citations omitted); *Soares v. City of Oakland,* 9 Cal.App.4th 1822, 1828–29 (1992) ("We conclude … that 'willful' employer assaults within the meaning of section 3602(b)(1) do not include all common law batteries, but only those batteries that are specifically intended to injure.") This exception does not authorize a civil action against an employer for injury resulting from the willful assault of a co-employee based on a theory of *respondeat superior*. *Fretland v. Cnty. of Humboldt*, 69 Cal.App.4th 1478, 1489 (1999). Under Labor Code Section 3601, subdivision (b), "[i]n no event… shall the employer be held liable, directly or indirectly, for damages awarded against, or for a liability incurred by the other employee…" This section "unambiguously prohibits imposing civil liability on an employer for one employee's assault and battery of another." *Fretland*, 69 Cal.App.4th at 1987. A private action against an employer based on a co-employee's willful and unprovoked physical act of aggression is prohibited. *Id*.

Here, the FAC does not allege specific misconduct outside the consensual training exercise. Even if the FAC adequately pleads a battery by Doe 4 (which it does not, as discussed below), no facts plausibly state that the *employer* (the City) engaged in willful misconduct by knowing, permitting, or approving Doe 4's allegedly intentional malfeasance against Recruit Psalms. Conclusory, speculative, and bare recitals of the elements do not suffice. The FAC does not plausibly allege a "willful physical assault" by the City and no exception within the meaning of Cal. Lab. Code §3602(b)(1) attaches.

[Proposed] Order
Case No. 3:26-cv-03880 LB

4897-0335-3789, v. 1

Neither does the fraudulent concealment exception under Cal. Lab. Code §3602(b)(2) apply. This exception is an extremely limited one. *E.g.*, *Jensen v. Amgen, Inc.*, 105 Cal.App.4th 1322, 1326–27 (2003). To recover under this exception, the employee must prove that the employer knew of the work-related injury, that the employer concealed the knowledge from the employee, and that the injury was aggravated due to the concealment. *Foster*, 40 Cal.3d at 312. Critically, "[t]he exception does not apply where the employee was aware of the injury at all times" (*Silas v. Arden*, 213 Cal.App.4th 75, 91 (2012)) and a defendant "obviously [cannot] be charged with concealing matters about which it did not know" (*Foster,* 40 Cal.3d at 312). *See, e.g.*, *Jensen,* 105 Cal.App.4th at 1326; *Evans v. Arizona Cardinals Football Club, LLC*, 262 F. Supp. 3d 935, 939 (N.D. Cal. 2017). Recruit Psalms personally experienced medical distress at the Academy, it cannot be plausibly asserted that he was unaware of his injury due to concealment; nor could any purported lapse in post-incident communications to his parents aggravate his condition. Without these required elements, this exception does not apply.

No facts remove this case from workers' compensation exclusivity, and the claims are barred.

### D.    Plaintiffs' Derivative Claims Are Barred.

Because Plaintiffs' claims arise from Recruit Psalms' employment-related injury, and because the parents' claims are derivative of Recruit Psalms' rights, the exclusivity bar applies with equal force to the parents' state law civil claims. *See* Cal. Lab. Code §3602(a) (exclusivity rule applies to "employee or his or her dependents"); *Snyder,* 16 Cal.4th at 997 ("the exclusive jurisdiction provisions bar civil actions against employers by nondependent parents of an employee for the employee's wrongful death"); *e.g.*, *LeFiell Mfg. Co.,* 55 Cal. 4th at 284; *Treat*, 82 Cal.App. at 615–16. Here, Plaintiffs' state law claims are barred under the exclusivity provisions because they depend entirely on Recruit Psalms' injuries. Plaintiffs' state claims (Claims 1 and 4) are barred by workers' compensation exclusivity and they are DISMISSED.

### III.    The FAC Fails to State any Claim Under California Law.

Even assuming that workers' compensation exclusivity and statutory immunities do not bar Plaintiffs' state claims, the FAC fails to sufficiently plead any viable tort.

### A.       Procedural Defects Bar Any State-Law Survival Claim.

The battery (FAC ¶ 54) and negligence (*id.* ¶ 93) claims, brought as survival actions under state law, are procedrually defective and should be dismissed. The FAC does not attach a sworn affidavit or death certificate to assert a survival claim as required by statute and is procedurally defective. Cal. Civ. Proc. Code §377.32(a) (requires an affidavit or a declaration under penalty of perjury); §377.32(c) (requires the decedent's death certificate).

### B.       The FAC Fails to State a Negligence Claim (Claim 4).

An adequately pleaded claim for negligence requires (1) a legal duty to use reasonable care; (2) breach of that duty; and (3) proximate cause between the breach and (4) the plaintiff's injury. *Mendoza v. City of Los Angeles*, 66 Cal.App.4th 1333, 1339 (1998) (internal citations omitted). The FAC fails to sufficiently plead these elements.

### 1.       There is No Predicate Tort.

The FAC does not state a negligence claim against any actor. Plaintiffs fail to plead, with particularity, if any actor undertook a specific duty of care, what act constituted a breach of duty and caused injury, such that the challenged conduct constitutes a wrongful act to "allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 550 U.S at 678.

Recruit Psalms is entitled to no legal duty of care to protect him from the risks of the training. The primary assumption of risk doctrine, which applies to peace-officer training, bars the claim. *Saville v. Sierra College*, 133 Cal.App.4th 857, 866–70 (2005). "Where, by virtue of the nature of the activity and the parties' relationship to the activity, defendant owed no legal duty to protect plaintiff from the particular risk of harm that caused the injury (so-called 'primary assumption of the risk'), plaintiff is completely barred from recovery." *Knight v. Jewett,* 3 Cal.4th 296, 308–309 (1992). The California Supreme Court has long recognized that "careless conduct" is inherent in many activities and that holding participants liable for such conduct would chill vigorous participation. *Id.* at 318–319. In *Saville v. Sierra College*, the court found that a plaintiff injured from a "police officer training course" has no claim for relief because it was barred by the doctrine of primary assumption of risk. *Saville*, 133 Cal.App.4th at 866–870. The court reasoned that being struck and thrown are inherent

[Proposed] Order
Case No. 3:26-cv-03880 LB

4897-0335-3789, v. 1

risks of learning use of force and arrest and control methods during police training, and such manuevers are "inherently dangerous." *Saville*, 133 Cal.App.4th at 867. Imposing a duty to eliminate the risk of injury from this type of training would invariably chill vigorous participation in learning the maneuvers and defeats its very purpose. *Id.* at 868. "The maneuvers cannot successfully be learned… for eventual use by peace officers without incurring the risk of injury from practicing them." *Id.* at 868. The primary assumption of risk doctrine similarly applies to injuries from combat training, such as judo manuevers, under the same rationale. *Cf. Bushnell v. Japanese-Am. Religious & Cultural Ctr.*, 43 Cal.App.4th 525, 531–32 (1996). And the doctrine applies to "fitness training" involving "strenuous physical activity," whose inherent risks include "physical distress," muscle strains and injury including on "less obvious muscles such as the heart," and "[s]tress on the cardiovascular sytem." *See Rostai v. Neste Enters.*, 138 Cal.App.4th 326, 332–33 (2006). Physical distress is an inherent risk of fitness training even where the exertion allegedly exceeds the participant's physical capabilities and causes serious injury. *Id.* at 333–35.

Applying similar rationale to the facts here, physical contact and physical distress are the inherent risks of a police defensive-tactics drill and the primary presumption of risk doctrine applies. No defendant owed Recruit Psalms a legal duty and the claim is barred.

The FAC's conclusory assertions that unspecified, group defendants had a "duty to check for any potential medical problems" (FAC ¶ 24) or "duty of care to protect recruits" (*id.* ¶ 98) are without statutory basis and need not be accepted as true. *See* Cal. Gov. Code §815(a); *Eastburn v. Reg'l Fire Prot. Auth.*, 31 Cal.4th 1175, 1183 (2003). Public employees cannot be held liable for another's wrongful conduct. Cal. Gov. Code §820.8. Assertions that unspecified, group defendants were "negligent per se" for violating unspecified statutes[5] resulting in damages from a "shooting" (FAC ¶¶

---

[5] Negligence per se is an evidentiary concept and non-factual. This legal conclusion articulates no affirmative legal duty. To the extent the FAC mentions certain statutes, it does not attempt to (and indeed, Plaintiffs cannot) plead any violation of a mandatory duty.

For liability to be permitted under Government Code section 815.6, three requirements must be satisfied: "(1) an enactment must impose a mandatory duty; (2) the enactment must be meant to protect against the kind of risk of injury suffered by the party asserting section 815.6 as a basis for liability; and (3) breach of the mandatory duty must be a proximate cause of the injury suffered." *San Mateo Union High Sch. Dist. v. City of San Mateo*, 213 Cal.App.4th 418, 428 (2013). Dispositive and lacking, here, "the enactment at issue [must] be obligatory, rather than merely discretionary or permissive, in its directions to the public entity; it must require, rather than merely authorize or permit,

[Proposed] Order
Case No. 3:26-cv-03880 LB

4897-0335-3789, v. 1

98–101) fare no better. Setting aside clearly false assertions[6] and legal conclusions, the FAC attributes no specific, personal conduct against any actor that constitutes a breach of a legal duty that proximately caused the injury.

In other words, the FAC fails to plead "more than a sheer possibility that a defendant has acted unlawfully" and "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Twombly*, 550 U.S. at 557; Fed. R. Civ. P. 8. Setting aside conclusions and bare recitals of the elements, there is no legal or factual basis to maintain a negligence claim.

**2.    There is No Direct Liability Against the City or San Francisco Police Department.**

A public entity, such as the City or the SFPD, cannot be held directly liable for common-law tort liability. Cal. Gov. Code §815(a) ("Except as otherwise provided by statute … [a] public entity is not liable for an injury."); *Eastburn*, 31 Cal.4th at 1183. "[I]n California, 'all government tort liability must be based on statute.'" *Hoff v. Vacaville Unified Sch. Dist.*, 19 Cal.4th 925, 932 (1998). The legislature did not intend to expand the rights of plaintiffs to sue public entities, "but to confine potential governmental liability to rigidly delineated circumstances." *Eastburn*, 31 Cal.4th 1175, 1183 (internal citation and quotations omitted). It is also well-established that there is no cause of action against a public entity for failure to supervise its employees under California law. *de Villers v. Cnty. of San Diego*, 156 Cal.App.4th 238, 255–56 (2007) ("We conclude that a direct claim against a governmental entity asserting negligent hiring and supervision ... may not be maintained"); *see also Berman v. Sink*, No. CV F13-0597 LJO SAB, 2013 WL 2360899, at *16 (E.D. Cal. May 29, 2013) ("There is no dispute that the County is not subject to a direct claim for negligent hiring, retention, supervision, training and staffing"); *Skeels v. Pilegaard*, No. C12-2175 TEH, 2013 WL 970974, at *9 (N.D. Cal. March 12, 2013) ("California courts of appeal have held that no statutory basis exists for a claim of direct liability based on a public entity's negligent hiring, policymaking, and supervision.").

---

that a particular action be taken or not taken." *Id*. at 428. Plaintiffs can point to no *obligatory* mandate on law enforcement selection or training procedures requiring an EKG test or electronic monitoring of vital signs during training.

[6] These improper, erroneous assertions must be withdrawn and may be subject to sanctions otherwise. Fed. R. Civ. P. 11. This error was not corrected despite notice through Defendants' prior motion to dismiss (Dkt. 10 at p. 25 n. 4).

[Proposed] Order
Case No. 3:26-cv-03880 LB

4897-0335-3789, v. 1

The FAC states no direct liability claim against the City and it is DISMISSED.

### 3. There is No Vicarious Liability Against the City or San Francisco Police Department.

The vicarious liability claim also fails because it cannot attach to speculative wrongs by unspecified actors. To support a vicarious liability negligence claim, plaintiffs must first assert a predicate negligent act. The FAC states none here. The City owes no common-law duty to protect (Cal. Gov. Code §815) and negligence per se "is an evidentiary doctrine, rather than an independent cause of action." *Jackson v. Airbnb, Inc.,* 654 F. Supp. 3d 990, 996 (C.D. Cal. 2023) (citing *Jones v. Awad*, 39 Cal.App.5th 1200, 1210 (2019)). There is also no affirmative duty for any municipality to implement employment selection, training, or medical screening in the manner desired by Plaintiffs; and regardless, a policy-maker is immune from liability in their discretionary and deliberative, policy decisions on how to select and train their employees. Cal. Gov. Code §820.2 ("Except as otherwise provided by statute, a public employee is not liable for an injury resulting from his act or omission where the act or omission was the result of the exercise of the discretion vested in him, whether or not such discretion be abused."). Any public employee responsible for designing or implementing training is immunized from these discretionary decisions because, inherent in these decisions, the employees necessarily evaluate between multitudes of options on how to effectively train new recruits. *See Caldwell v. Montoya*, 10 Cal.4th 972, 980 (1995).

The vicarious liability claim is DISMISSED.

### C. The FAC Fails to State Facts to Support a Battery Claim (Claim 1).

The battery claim also fails. First, the Court should dismiss any direct liability theory againt the City (FAC ¶ 55) because there is no statutory basis for a public entity to be held *directly* liable for battery. Cal. Gov. Code §815(a).

Any vicarious liability theory based on alleged battery by Doe 4 also fails. A battery claim cannot arise from the consensual combat training exercise alleged here. California civil battery requires proof of: (1) a defendant intentionally did an act that resulted in a harmful or offensive contact with the plaintiff's person; (2) the plaintiff did not consent to the contact; and (3) the harmful or offensive contact caused injury, damage, loss, or harm to the plaintiff. *Manriquez v. Vangilder*, No.

[Proposed] Order
Case No. 3:26-cv-03880 LB

4897-0335-3789, v. 1

16-CV-01320-HSG, 2018 WL 2762571, at *2 (N.D. Cal. June 8, 2018). By voluntarily enrolling in the Academy and participating in a structured training involving a simulated combat (FAC ¶¶ 24-25), Recruit Psalms consented to the physical contact such training necessarily entails. The FAC pleads no fact placing the alleged contact outside the scope of the consented to exercise and conclusory, "threadbare recitals" to the contrary are disregarded. *Iqbal*, 556 U.S at 678. Plaintiffs' obligation to provide the "grounds" of their entitlement for relief requires more than "labels and conclusions" and formulaic recitations of the elements. *Twombly*, 550 U.S. at 555. Finally, a trainer's in-the-moment judgments about how to engage a recruit in a combat simulation are discretionary acts immunized by Government Code section 820.2, and the City shares the immunity under section 815.2(b). The battery claim is DISMISSED.

## IV.    San Francisco Police Department Should be Dismissed Because It is Duplicative to Defendant City.

To streamline the pleadings and minimize duplicative discovery, SFPD should be dismissed as a defendant. The San Francisco Police Department should be dismissed because it not an independent legal entity and is duplicative to the City. (RJN Ex. D [S.F. City Charter §§1.101, 4.100, 4.127[7]].) District courts have dismissed "police departments as duplicative defendants where the claims against a city and its police department arise from the same facts." *Mann v. City of Chula Vista*, No. 18-cv-2525 WQH MDD, 2020 WL 5759749, at *3 (S.D. Cal. Sept. 8, 2020) (collecting cases); *Kamath v. United States Dep't of Homeland Sec.*, No. 3:23-cv-03531 JSC, 2024 WL 1077328, at *2 (N.D. Cal. Mar. 12, 2024). Dismissal is proper.

## V.    The Court Should Grant Dismissal Without Leave to Amend.

Leave to amend is properly denied where amendment would be futile. *Leadsinger, Inc. v. BMG Music Publ'g*, 512 F.3d 522, 532 (9th Cir. 2008). The defects here are legal. Amendment could not transform omissions into affirmative conduct, particularize a danger the FAC concedes was unknown to everyone, or supply clearly established law that does not exist. Nor could amendment change the

---

[7] The SFPD is a department of the City and County of San Francisco established under the San Francisco Charter (S.F. Charter, art. IV, § 4.127). The City has established by charter that it is the authority to appear and defend against such suits and the SFPD has no independent legal existence apart from the City. *Hofmann v. City & Cnty. of San Francisco*, 870 F. Supp. 2d 799, 803 (N.D. Cal. 2012); *Schiff v. City & Cnty. of San Francisco*, No. C 08-4627 PJH, 2009 WL 1011702, at *2 (N.D. Cal. Apr. 15, 2009).

[Proposed] Order
Case No. 3:26-cv-03880 LB

4897-0335-3789, v. 1

core fact that Recruit Psalms was injured during sanctioned, Academy training. California's workers' compensation exclusivity bar is therefore incurable. Plaintiffs already amended once and still fail to assert any cognizable claim. As such, the FAC is DISMISSED in its entirety without leave to amend.

**CONCLUSION**

For the foregoing reasons, the Court GRANTS Defendants' motion and DISMISS Plaintiffs' FAC without leave to amend.

IT IS SO ORDERED.

Dated: _____    _____

HONORABLE LAUREL BEELER
United States Magistrate Judge

[Proposed] Order
Case No. 3:26-cv-03880 LB

4897-0335-3789, v. 1