Bradley C. Gage, Esq., S.B. No. 117808
brad@bradgagelaw.com
Milad Sadr, Esq., S.B No. 245080
milad@bradgagelaw.com
Sarah E. Gage, Esq., S.B. No. 306090
sarah@bradgagelaw.com
**BRAD GAGE LAW**
A Professional Corporation
23002 Victory Boulevard
Woodland Hills, California 91367
(818) 340-9252  Fax: (818) 340-9088

Attorneys for Plaintiffs,
CHRISTINA PSALMS; MARCUS PSALMS; JON-MARQUES PSALMS; AND THE ESTATE OF JON-MARQUES PSALMS

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTINA PSALMS, and MARCUS PSALMS individually and as successors in interest to JON-MARQUES PSALMS, of which CHRISTINA PSALMS and MARQUES PSALMS are beneficiaries,<br><br>Plaintiff,<br><br>vs.<br><br>CITY OF SAN FRANCISCO, SAN FRANCISCO POLICE DEPARTMENT, PAUL YEP, and DOES 1-100, inclusive | Case No. 3:26-cv-03880 LB<br><br>**PLAINITFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTFFS' FIRST AMENDED COMPLAINT**<br><br>Hearing Date: August 20, 2026<br>Time: 9:30 a.m.<br>Place: 450 Golden Gate Avenue<br>15th Floor, Courtroom B<br>San Francisco, CA<br><br>Trial Date: None Set |

Plaintiff respectfully submits this Opposition to Defendant's Motion to Dismiss Plaintiffs' Complaint.

## TABLE OF CONTENTS

I. INTRODUCTION ....................................................................................... 6

II. SUMMARY OF FACTS ............................................................................ 6

III. STANDARD GOVERNING FRCP 12(B)(6) MOTIONS. .................... 8

IV. LIABILITY IS SUFFICIENTLY PLED AGAINST
CANNING & CRUZ. ................................................................................. 9

V. STATE-CREATED DANGER CLAIM IS SUFFICIENTLY
PLEAD............................................................................................................ 11

    A. First Prong ....................................................................................... 11

    B. Second Prong ................................................................................... 12

VI. FAMILIAL DEPRIVATION ...................................................................... 13

VII. QUALIFIED IMMUNITY DOES NOT APPLY. ................................. 14

VIII. MUNICIPAL LIABILITY IS SUFFICIENTLY PLEAD. ................... 15

    A. Deliberate Indifference ................................................................. 16

IX. WORKER'S COMPENSATION EXCLUSIVITY DOES NOT
APPLY. ........................................................................................................... 17

X. STATE LAW CLAIMS ............................................................................... 17

    A. The Procedural Requirements Can Be Cured. ........................ 17

    B. The City Is Vicariously Liable for Negligence of its
Employees. ....................................................................................... 17

    C. Battery Is Sufficiently Plead. ....................................................... 18

XI. ALTERNATIVELY, PLAINTIFF REQUESTS LEAVE TO
AMEND ......................................................................................................... 18

XII. CONCLUSION ............................................................................................. 19

PLAINTIFF'S OPPOSITION D's MOTION TO DISMISS FAC

# TABLE OF AUTHORITIES

**Cases**

*Alvarez v. Hill*, 518 F.3d 1152, 1158 (9th Cir. 2008).....................................................9

*Ashcroft v. al-Kidd,* 563 U.S. 731, 741 (2011)............................................................14

*Ballew v. City of Pasadena*, 2019 WL 9341339 .........................................................16

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 563 (2007).................................................8

*Blankenhorn v. City of Orange*, 485 F.3d 463, 488 (9th Cir.2007) ...........................17

*City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988). ........................................15

*Clement v. Gomez,* 298 F.3d 898, 905 (9th Cir.2002).................................................10

*Coby v. City of Tombstone*, 2025 WL 3267904, .........................................................15

Connick v. Thompson, 563 U.S. 51, 62 (2011)..............................................................16

*County of Los Angeles*, 758 F.3d 1154, 1159 (9th Cir. 2014).....................................10

*D.V. v. City of Sunnyvale*, 65 F. Supp. 3d 782, 785 (N.D. Cal. 2014) .......................18

*Daniels v. Williams*, 474 U.S. 327 (1986))..................................................................14

*Doe v. U.S.*, 58 F.3d 494, 497 (9th Cir.1995)...............................................................19

*Est. of Prasad ex rel. Prasad v. Cnty. of Sutter*, 958 F. Supp. 2d 1101, 1113–14 (E.D. Cal. 2013) .................................................................................................................10

*Est. of Soakai v. Abdelaziz*, 137 F.4th 969, 983 (9th Cir. 2025) ...............................11

*Gazette v. City of Pontiac*, 41 F.3d 1061, 1064 (6th Cir. 1994)..................................9

*Gordon v. County of Orange*, 6 F.4th 961, 969 (9th Cir. 2021)..................................14

*Gravelet-Blondin v. Shelton*, 728 F.3d 1086, 1096 (9th Cir. 2013) ...........................16

*Hansen v. Black*, 885 F.2d 642, 645-46 (9th Cir. 1989...............................................9

*Herrera v. Los Angeles Unified Sch. Dist.*, 18 F.4th 1156, 1158 (9th Cir. 2021)......14

*Hodgers-Durgin v. de la Vina*, 199 F.3d 1037 (9th Cir. 1999) ...................................13

*Hunter v. County of Sacramento*, 652 F.3d 1225, 1236 (9th Cir. 2011)....................15

*Hyde v. City of Willcox*, 23 F.4th 863, 874 (9th Cir. 2022)..........................................9

*Johnson v. City of Shelby, Miss.,* (2014) 574 U.S. 10, 11-12.......................................8

3

86723542.v1-OGLETREE

*Johnson v. State of California*, 207 F.3d 650, 653 (9th Cir. 2000) ..............................9

*Kelson v. City of Springfield*, 767 F.2d 651, 654 (9th Cir. 1985) ..............................14

*L.W. v. Grubbs*, 974 F.2d 119, 123 (9th Cir. 1992)......................................................11

*Lillard v. Shelby County Board of Ed.,* 76 F.3d 716, 724 (6th Cir. 1996) ...................9

*Lormand v. US Unwired, Inc.,* 565 F.3d 228, 232 (5th Cir. 2009) ...............................9

*Martinez v. High*, 91 F.4th 1022, 1031 (9th Cir. 2024)...............................................14

*Mary M. v. City of Los Angeles*, 54 Cal.3d 202, 215 (1991)......................................18

*Maxwell v. County of San Diego*, 708 F.3d 1075, 1086 (9th Cir. 2013)....................10

*Megargee v. Wittman*, (E.D.Cal.2008) 550 F.Supp.2d 1190 ......................................18

*Murguia v. Langdon*, 61 F.4th 1096, 1111 (9th Cir. 2023)..................................11, 14

*Nehad v. Browder*, 929 F.3d 1125, 1141 (9th Cir. 2019)...........................................15

*Nozzi v. Hous. Auth. of City of Los Angeles*, 425 Fed.Appx. 539, 542 (9th Cir.201118

*Polanco v. Diaz*, 76 F.4th 918, 926 (9th Cir. 2023) ...................................................11

*Redman v. Cnty. of San Diego*, 942 F.2d 1435, 1446 (9th Cir.1991 ..........................10

*Robles v. Agreserves, Inc.*, 158 F. Supp. 3d 952, 974 ...............................................17

*Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir.1986)..................................................................................................................19

S*hafer v. County of Santa Barbara*, 868 F.3d 1110, 1117-18 (9th Cir. 2017)...........14

*Smith v. City of Fontana*, 818 F.2d 1411, 1418 (9th Cir. 1987)................................13

*Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011)................................................9,10

*Strom v. United States,* 641 F.3d 1051, 1067 (9th Cir. 2011) ......................................8

*Thompson v. City of Los Angeles*, 885 F.2d 1439, 1444 (9th Cir. 1989) ...................16

*Torres v. Parkhouse Tire Service, Inc.* (2001) 26 Cal.4th 995..................................17

**Other Authorities**

42 U.S.C. § 1983...........................................................................................................15

Cal. Civ. Proc. Code §377.32(a)...................................................................................18

Cal. Gov't Code § 815.2................................................................................................18

4

PLAINTIFF'S OPPOSITION D's MOTION TO DISMISS FAC

California Health and Safety Code § 1799.106............................................................19

California Tort Claims Act in 1963 (§ 810 et seq.)....................................................19

Lab.C. § 3601(a)(1) .................................................................................................18

Title 8 CCR §3203(a)(4),(6) ...................................................................................13

Title 8 CCR §3203(a)(7)..........................................................................................14

Title 8, CCR section 1070 ....................................................................................7, 13

**Rules**

Fed. R. Civ. Proc. 8(a)(2) .........................................................................................9

PLAINTIFF'S OPPOSITION D's MOTION TO DISMISS FAC

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

Plaintiffs have sufficiently plead federal and state law claims. Defendants seek to convert this motion into a Rule 56 motion without providing Plaintiffs with the opportunity to conduct discovery. This is improper and the motion to dismiss should be denied in its entirety.

### II.    SUMMARY OF FACTS

Since 2005, drills intended to teach defensive tactics at law enforcement academies have been linked to at least a dozen deaths and hundreds of injuries, some resulting in permanent disability. FAC, ¶ 29. In 2016, the State of Massachusetts banned the use of "Red Man" drills. FAC, ¶ 30. In 2020, a recruit who was training to be a deputy for the Santa Clara County Sheriff's Office died after engaging in a "Red Man" drill. FAC, ¶ 31. In 2024, the Texas Game Warden Academy was involved in several cases of cadets enduring four-on-one combat drills, sustaining severe concussions, skull fractures, and other debilitating injuries. FAC, ¶ 32.

Title 8 CCR §3203(a)(4),(6) requires the employers to identify, evaluate, and correct workplace hazards. Hence, SFPD was legally required to identify, evaluate, and correct hazards present with the "Red Man" drill. FAC, ¶ 33. Title 8, CCR section 1070 requires properly trained instructors and a sufficient number of instructors to protect recruits and others participating in Red Man drills from injury. FAC, ¶ 34. Objectively, the hazards present with the "Red Man" drill are well-known in law enforcement. Yet, Defendants have intentionally refused to remedy known hazards despite actual knowledge of the deficiencies and risks to the lives of trainees. FAC, ¶ 35.

On or about August 20, 2025, JON-MARQUES participated in a high-intensity training exercise commonly referred to as a "Red Man" drill. The drill involved strenuous calisthenics designed to significantly elevate recruits' heart rates prior to a simulated combat scenario. During the drill, JON-MARQUES was inflicted with a

6

head injury by DOE 4, which caused a brain bleed.  Based on information and belief, the brain bleed was intentionally inflicted upon JON-MARQUES. FAC, ¶ 25.

On or about August 20, 2025, Defendants intentionally did not determine a health baseline for JON-MARQUES even though such a measurement is essential to safe implementation of high-intensity drills such as "Red Man." FAC, ¶ 36. In fact, under SFPD General Order 11.10, active officers participate in the SFPD Physical Fitness Evaluation Program to measure and establish their baseline physical capabilities. FAC, ¶ 37. Additionally, on or about August 20, 2025, Defendants did not measure or in any way medically monitor JON-MARQUES 's vital signs. FAC, ¶ 38. Defendants did not know or monitor vital signs during high-intensity drills is essential to the safety of participants. FAC, ¶ 39. Measuring vital signs has become common place in police departments and other places where high-intensity exercises are employed. FAC, ¶ 40.

Title 8 CCR §3203(a)(7) requires the employer to provide training and instructions. Here, on or about August 20, 2025, supervisory personnel present were not trained to ensure that intense training would not harm the recruits. Defendants did not provide training of other means such as the use of electronic monitoring devices to supervise personnel during the recruits' intense physical training. These devices are to monitor the vital signs of the recruits during their intense exercise. FAC, ¶ 41.

Defendants CANNING, CRUZ, and DOE 4 forced JON-MARQUES participate in the "Red Man" drill despite well-known dangers of the drill and lack of safety precautions. FAC, ¶ 69. Defendants CANNING, CRUZ, and DOE 4 knew or should have known about much publicized risks and dangers associated with the "Red Man" drill. FAC, ¶ 70. Defendants CANNING, CRUZ, and DOE 4 did not determine a health baseline for JON-MARQUES even though such a measurement is essential to safe implementation of high-intensity drills such as "Red Man." As such, JON-MARQUES was placed in a much more dangerous situation than before. FAC, ¶ 71.

On or about August 20, 2025, Defendants CANNING, CRUZ, and DOE 4 did

7

not measure or in any way medically monitor JON-MARQUES 's vital signs. As such, JON-MARQUES was placed in a much more dangerous situation than before. FAC, ¶ 72. Defendants CANNING, CRUZ, and DOE 4 knew or should have known that on or about August 20, 2025, supervisory personnel were not trained to ensure that intense training would not harm the recruits. Defendants did not provide training of other means such as the use of electronic monitoring devices to supervisory personnel during the recruits' intense physical training. These devices are to monitor the vital signs of the recruits during their intense exercise. As such, JON-MARQUES was placed in a much more dangerous situation than before. FAC, ¶ 73.

## III.    STANDARD GOVERNING FRCP 12(B)(6) MOTIONS.

A Rule 12(b)(6) motion is similar to the common law general demurrer—i.e., it tests the legal sufficiency of the claim or claims stated in the complaint. *Strom v. United States,* 641 F.3d 1051, 1067 (9th Cir. 2011). Under this liberal system of "notice pleading," governed by Federal Rule 8(a)(2), a claimant is not required to set out in detail the facts upon which his claim is based.  The Rule simply requires "a short and plain statement of the claim" that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests.  Fed. R. Civ. Proc. 8(a)(2). Under well-established principles of federal law, "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 563 (2007). Moreover, "when a complaint adequately states a claim, it may not be dismissed based on a district court's assessment that the plaintiff will fail to find evidentiary support for his allegations or prove his claim to the satisfaction of the factfinder." *Id.*

The test is whether the facts, as alleged, support any valid claim entitling plaintiff to relief, not necessarily that intended by plaintiff.  Thus, a complaint should not be dismissed because plaintiff relies on an incorrect or imperfectly stated legal theory if the facts alleged support any valid theory. *Johnson v. City of Shelby, Miss.,* (2014) 574 U.S. 10, 11-12 (per curiam); *Alvarez v. Hill*, 518 F.3d 1152, 1158 (9th Cir.

PLAINTIFF'S OPPOSITION D's MOTION TO DISMISS FAC

2008). On a motion to dismiss under Rule 12(b)(6), the court must "accept as true all of the factual allegations set out in plaintiff's complaint, draw inferences from those allegations in the light most favorable to plaintiff, and construe the complaint liberally." *Doe v. United States*, 419 F.3d 1058, 1062 (9th Cir. 2005).

Traditionally, courts have viewed with "disfavor" motions to dismiss under Rule 12(b)(6) because of the lesser role pleadings play in federal practice and the liberal policy regarding amendment. *See Lormand v. US Unwired, Inc.,* 565 F.3d 228, 232 (5th Cir. 2009) (Rule 12(b)(6) motions "viewed with disfavor and rarely granted"); *Broam v. Bogan*, 320 F.3d 1023, 1028 (9th Cir. 2003) (Rule 12(b)(6) dismissal with prejudice proper only in "extraordinary" cases.) Moreover, some courts hold motions to dismiss civil rights complaints should be "scrutinized with special care." *Johnson v. State of California*, 207 F.3d 650, 653 (9th Cir. 2000) ("[W]e have emphasized that the rule of liberal construction is "particularly important in civil rights cases."); *Gazette v. City of Pontiac*, 41 F.3d 1061, 1064 (6th Cir. 1994) ("[D]istrict court's dismissal of a civil rights complaint on a 12(b)(6) motion is scrutinized with special care."); *Lillard v. Shelby County Board of Ed.,* 76 F.3d 716, 724 (6th Cir. 1996).

## IV.    LIABILITY IS SUFFICIENTLY PLED AGAINST CANNING & CRUZ.

A supervisor can be held liable in his or her individual capacity under § 1983 only if (1) the supervisor personally participated in the constitutional violation, or (2) there is a "sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." *Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011) (quoting *Hansen v. Black*, 885 F.2d 642, 645-46 (9th Cir. 1989)). Supervisors can be held liable for: "1) their own culpable action or inaction in the training, supervision, or control of subordinates; 2) their acquiescence in the constitutional deprivation of which a complaint is made; or 3) for conduct that showed a reckless or callous indifference to the rights of others." *Hyde v. City of Willcox*, 23 F.4th 863, 874 (9th Cir. 2022); *see Starr*, 652 F.3d at 1207-08. "A supervisor can be held liable in his or

her individual capacity if he or she "knew of the violations and failed to act to prevent them." *Maxwell v. County of San Diego*, 708 F.3d 1075, 1086 (9th Cir. 2013). In *Flores v. County of Los Angeles*, 758 F.3d 1154, 1159 (9th Cir. 2014), the court held that plaintiffs must show that the supervisory defendant "was deliberately indifferent to the need to train subordinates, and the lack of training actually caused the constitutional harm or deprivation of rights." Under this standard, the supervisor must have "disregarded the known or obvious consequences that a particular omission in their training program would cause . . .employees to violate citizens' constitutional rights." *Id.*

" 'Supervisory liability exists even without overt personal participation in the offensive act if supervisory officials implement a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of a constitutional violation.' " *Clement v. Gomez,* 298 F.3d 898, 905 (9th Cir.2002) (quoting *Redman v. Cnty. of San Diego*, 942 F.2d 1435, 1446 (9th Cir.1991) (en banc)). Where a complaint "specifically alleges ... that [a supervisory defendant] was given notice, in several reports, of systematic problems," and he "did not take action to protect inmates under his care despite the dangers ... of which he had been made aware," such allegations "plausibly suggest that [he] acquiesced in the unconstitutional conduct of his subordinates, and was thereby deliberately indifferent to the danger posed to [plaintiff]." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir.2011)." *Est. of Prasad ex rel. Prasad v. Cnty. of Sutter*, 958 F. Supp. 2d 1101, 1113–14 (E.D. Cal. 2013).

Here, Canning and Cruz oversaw the SFPD Police Academy, including supervisors, training, and safety. FAC, ¶¶ 66-67. Canning and Cruz forced JON-MARQUES participate in the "Red Man" drill despite well-known dangers of the drill and lack of safety precautions. FAC, ¶69. Canning and Cruz knew or should have known about much publicized risks and dangers associated with the "Red Man" drill. FAC, ¶70. Canning and Cruz knew or should have known that on or about August 20, 2025, supervisory personnel were not trained to ensure that intense training would not

10

harm the recruits. Defendants did not provide training of other means such as the use of electronic monitoring devices to supervisory personnel during the recruits' intense physical training. These devices are to monitor the vital signs of the recruits during their intense exercise. As such, JON-MARQUES  was placed in a much more dangerous situation than before. FAC, ¶73.

## V.    STATE-CREATED DANGER CLAIM IS SUFFICIENTLY PLEAD.

"The state-created danger exception has two requirements. [footnote 11] "First, the exception applies only where there is 'affirmative conduct on the part of the state in placing the plaintiff in danger.' Second, the exception applies only where the state acts with 'deliberate indifference' to a 'known or obvious danger.' " *Murguia v. Langdon*, 61 F.4th 1096, 1111 (9th Cir. 2023), cert. denied sub nom. *Tulare v. Murguia*, 144 S. Ct. 553, 217 L. Ed. 2d 295 (2024).

### A.    First Prong

"To satisfy the state-created danger exception's first prong, Plaintiffs must plausibly allege that Defendants' affirmative actions (1) placed Plaintiffs in a worse position than they would have occupied had Defendants not acted at all; (2) created or exposed Plaintiffs to an actual and particularized danger; and (3) resulted in foreseeable harm to Plaintiffs." *Est. of Soakai v. Abdelaziz*, 137 F.4th 969, 983 (9th Cir. 2025), cert. denied, 146 S. Ct. 1771, 224 L. Ed. 2d 161 (2026). "We have recognized, for instance, that a state employer can be liable under the state-created-danger doctrine for knowingly assigning an employee to work in a building infected with toxic mold, *see Pauluk*, 836 F.3d at 1125, or for requiring a prison employee to work alone with an inmate likely to cause her serious harm, *see L.W. v. Grubbs*, 974 F.2d 119, 123 (9th Cir. 1992)." *Polanco v. Diaz*, 76 F.4th 918, 926 (9th Cir. 2023).

Defendants CANNING, CRUZ, and DOE 4 forced JON-MARQUES participate in the "Red Man" drill despite well-known dangers of the drill and lack of safety precautions. FAC, ¶ 69. Defendants CANNING, CRUZ, and DOE 4 knew or should have known about much publicized risks and dangers associated with the "Red Man"

11

drill. FAC, ¶ 70. Defendants CANNING, CRUZ, and DOE 4 did not determine a health baseline for JON-MARQUES even though such a measurement is essential to safe implementation of high-intensity drills such as "Red Man." As such, JON-MARQUES was placed in a much more dangerous situation than before. FAC, ¶ 71.

On or about August 20, 2025, Defendants CANNING, CRUZ, and DOE 4 did not measure or in any way medically monitor JON-MARQUES 's vital signs. As such, JON-MARQUES was placed in a much more dangerous situation than before. FAC, ¶ 72. Defendants CANNING, CRUZ, and DOE 4 knew or should have known that on or about August 20, 2025, supervisory personnel were not trained to ensure that intense training would not harm the recruits. Defendants did not provide training of other means such as the use of electronic monitoring devices to supervisory personnel during the recruits' intense physical training. These devices are to monitor the vital signs of the recruits during their intense exercise. As such, JON-MARQUES was placed in a much more dangerous situation than before. FAC, ¶ 73.

### B.    Second Prong

Since 2005, drills intended to teach defensive tactics at law enforcement academies have been linked to at least a dozen deaths and hundreds of injuries, some resulting in permanent disability. FAC, ¶ 29. In 2016, the State of Massachusetts banned the use of "Red Man" drills. FAC, ¶ 30. In 2020, a recruit who was training to be a deputy for the Santa Clara County Sheriff's Office died after engaging in a "Red Man" drill. FAC, ¶ 31.

In 2024, the Texas Game Warden Academy was involved in several cases of cadets enduring four-on-one combat drills, sustaining severe concussions, skull fractures, and other debilitating injuries. FAC, ¶ 32. Title 8 CCR §3203(a)(4),(6) requires the employers to identify, evaluate, and correct workplace hazards. Hence, SFPD was legally required to identify, evaluate, and correct hazards present with the "Red Man" drill. FAC, ¶ 33.

Title 8, CCR section 1070 requires properly trained instructors and a sufficient

number of instructors to protect recruits and others participating in Red Man drills from injury. FAC, ¶ 34. Objectively, the hazards present with the "Red Man" drill are well-known in law enforcement. Yet, Defendants have intentionally refused to remedy known hazards despite actual knowledge of the deficiencies and risks to the lives of trainees. FAC, ¶ 35.

On or about August 20, 2025, Defendants intentionally did not determine a health baseline for JON-MARQUES even though such a measurement is essential to safe implementation of high-intensity drills such as "Red Man." FAC, ¶ 36. In fact, under SFPD General Order 11.10, active officers participate in the SFPD Physical Fitness Evaluation Program to measure and establish their baseline physical capabilities. FAC, ¶ 37.

Additionally, on or about August 20, 2025, Defendants did not measure or in any way medically monitor JON-MARQUES 's vital signs. FAC, ¶ 38. Defendants did not know or monitor vital signs during high-intensity drills is essential to the safety of participants. FAC, ¶ 39. Measuring vital signs has become common place in police departments and other places where high-intensity exercises are employed. FAC, ¶ 40.

Title 8 CCR §3203(a)(7) requires the employer to provide training and instructions. Here, on or about August 20, 2025, supervisory personnel present were not trained to ensure that intense training would not harm the recruits. Defendants did not provide training of other means such as the use of electronic monitoring devices to supervise personnel during the recruits' intense physical training. These devices are to monitor the vital signs of the recruits during their intense exercise. FAC, ¶ 41.

## VI.    FAMILIAL DEPRIVATION

Parents and children possess a constitutionally protected liberty interest in companionship and society with each other. *Smith v. City of Fontana*, 818 F.2d 1411, 1418 (9th Cir. 1987), overruled on other grounds by *Hodgers-Durgin v. de la Vina*, 199 F.3d 1037 (9th Cir. 1999) (en banc). This liberty interest is rooted in the Fourteenth Amendment, which states in relevant part that "[n]o State shall . . . deprive

any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. State interference with these liberty interests may give rise to a Fourteenth Amendment due process claim that is cognizable under 42 U.S.C. § 1983. *Kelson v. City of Springfield*, 767 F.2d 651, 654 (9th Cir. 1985), overruled on other grounds by *Daniels v. Williams*, 474 U.S. 327 (1986)). a state actor's failure to protect "may give rise to a § 1983 claim under the state-created danger exception when the state affirmatively places the plaintiff in danger by acting with deliberate indifference to a known or obvious danger." *Herrera v. Los Angeles Unified Sch. Dist.*, 18 F.4th 1156, 1158 (9th Cir. 2021) (internal quotation marks omitted). *See, e.g., Murguia*, 61 F.4th at 1115-116 (determining that father stated a plausible claim against a social worker for subjective deliberate indifference under the state-created danger theory by alleging that social worker was aware of mother's history of violence and mental health issues, including multiple specific instances of physical violence against her own family members, but falsely represented to police sergeant that mother was homeless and had no criminal history or history of child abuse).

Here, Plaintiffs can bring a familial association claim predicated on a state danger theory.

## VII.　QUALIFIED IMMUNITY DOES NOT APPLY.

"We begin our inquiry into whether this constitutional violation was clearly established by defining the law at issue in a concrete, particularized manner." S*hafer v. County of Santa Barbara*, 868 F.3d 1110, 1117-18 (9th Cir. 2017) (stating that the plaintiff bears the burden of showing that the rights allegedly violated were clearly established); *Gordon v. County of Orange*, 6 F.4th 961, 969 (9th Cir. 2021) ("[t]he plaintiff bears the burden of proving that the right allegedly violated was clearly established" at the time of the violation). A case directly on point is not necessary to defeat qualified immunity, but existing case law must have put "every reasonable official" on notice that the conduct was unconstitutional. *Martinez v. High*, 91 F.4th 1022, 1031 (9th Cir. 2024); *Ashcroft v. al-Kidd,* 563 U.S. 731, 741 (2011) (stating

that a plaintiff need not find "a case directly on point," but existing precedent must have placed the statutory or constitutional question beyond debate).

"Taken together, these cases put public officials on notice that they may be liable under the state-created danger doctrine in a scenario where: (1) the harmed party is an employee who encountered the danger in the course of carrying out their employment duties at a government building that was their workplace (*Grubbs*, *Pauluk*, and *Polanco*); (2) the danger was created by assigning the employee to work in close proximity to a known risk, either a human actor (*Grubbs*) or a physical condition (*Pauluk* and *Polanco*); (3) the officials knew the actor who posed the risk had a history of violence and was not qualified to perform its assigned job duties (*Grubbs*); and (4) the officials increased the employee's vulnerability by misrepresenting the risks involved in the employee's work (*Grubbs*) or actively concealing the danger posed by the physical condition (*Pauluk*)." *Coby v. City of Tombstone*, 2025 WL 3267904, at *8 (D. Ariz. Nov. 24, 2025).

Here, Jon-Marques was a harmed recruit who encountered the danger as a recruit in the police academy; the danger was created by assigning Jon-Marques to work in close proximity to the "Red Man" Drill and DOE 4. Defendants knew the dangers of the "Red Man" Drill and knew none of the safety precautions were in place.

## VIII.  MUNICIPAL LIABILITY IS SUFFICIENTLY PLEAD.

Municipal liability may attach when an employee committed a constitutional violation pursuant to a widespread practice or custom. *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988). The Ninth Circuit has held that "a custom or practice can be supported by evidence of repeated constitutional violations which went uninvestigated and for which the errant municipal officers went unpunished." *Hunter v. County of Sacramento*, 652 F.3d 1225, 1236 (9th Cir. 2011); *see also Nehad v. Browder*, 929 F.3d 1125, 1141 (9th Cir. 2019) (citing evidence sufficient to create triable issue regarding informal practice or policy)

A plaintiff seeking to establish municipal liability must demonstrate that the government "had a deliberate policy, custom, or practice that was the 'moving force' behind the constitutional violation he suffered." *Gravelet-Blondin v. Shelton*, 728 F.3d 1086, 1096 (9th Cir. 2013) (citations and quotations omitted).

The existence of custom as a basis for liability under § 1983 thus serves a critical role in insuring that local government entities are held responsible for widespread abuses or practices that cannot be affirmatively attributed to the decisions or ratification of an official government policymaker but are so pervasive as to have the force of law. *Thompson v. City of Los Angeles*, 885 F.2d 1439, 1444 (9th Cir. 1989) (overruled on other grounds by, *Bull v. City and County of San Francisco*, 595 F.3d 964 (9th Cir. 2010)).

### A.      Deliberate Indifference

" '[D]eliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." [Citation omitted.] Thus, when city policymakers are on actual or constructive notice that a particular omission in their training program causes city employees to violate citizens' constitutional rights, the city may be deemed deliberately indifferent if the policymakers choose to retain that program. [Citation omitted.]" Connick v. Thompson, 563 U.S. 51, 62 (2011).

"In inaction cases, "the plaintiff must show, first, that the policy amounts to deliberate indifference to the plaintiff's constitutional right. This requires showing that the defendant was on actual or constructive notice that its omission would likely result in a constitutional violation." *Jackson*, 749 F.3d at 763 (internal quotation marks, citations, and alterations omitted); *Tsao*, 698 F.3d at 1145 (same). Second, the plaintiff must show that the policy caused the violation in the sense that the municipality could have prevented the violation with an appropriate policy." *Jackson,* 749 F.3d at 763 (internal quotation marks, citations, and alterations omitted); *Tsao,* 698 F.3d at 1143 (same)." *Ballew v. City of Pasadena*, 2019 WL 9341339, at *8 (C.D. Cal. Mar. 29,

16

2019).

See FAC, ¶¶29-41, 69-73.

## IX.    WORKER'S COMPENSATION EXCLUSIVITY DOES NOT APPLY.

"[T]he workers' compensation laws will not prevent an employee from bringing a suit against a fellow employee for damages where "the employee's injury ... is proximately caused by a willful and unprovoked physical act of aggression of the other employee." *Robles v. Agreserves, Inc.*, 158 F. Supp. 3d 952, 974 (E.D. Cal. 2016); *see, e.g., Hart v. National Mortg. & Land Co.* (1987) 189 Cal.App.3d 1420, 1430 (action against employer who allegedly condoned willful physical assault by one employee against another, with intent to injure the latter, not barred by workers' compensation). Also, the exclusivity rule does not protect coworkers who commit a "willful and unprovoked physical act of aggression" with intent to injure. Lab.C. § 3601(a)(1); *see Torres v. Parkhouse Tire Service, Inc.* (2001) 26 Cal.4th 995, 1008 (giving as example, throwing a hammer at an employee).

Here, Plaintiffs allege a battery.

## X.    STATE LAW CLAIMS

### A.    The Procedural Requirements Can Be Cured.

While no declaration pursuant to Cal. Civ. Proc. Code §377.32(a) was included, Defendants do not dispute the death of decedent or Plaintiffs are his successors in interest.

### B.    The City Is Vicariously Liable for Negligence of its Employees.

"Cal. Gov't Code § 815.2, provides that "[a] public entity is liable for injury proximately caused by an act or omission of an employee of the public entity within the scope of his employment if the act or omission would, apart from this section, have given rise to a cause of action against that employee or his personal representative." Cal. Gov't Code § 815.2. Sunnyvale is therefore vicariously liable for any assault and battery or negligence by its officers. *Blankenhorn v. City of Orange*, 485 F.3d 463, 488 (9th Cir.2007) (finding that § 815.2 "clearly allows for

17

vicarious liability of a public entity when one of its police officers uses excessive force in making an arrest"); *Nozzi v. Hous. Auth. of City of Los Angeles*, 425 Fed.Appx. 539, 542 (9th Cir.2011) (holding that public entities "may be held vicariously liable for the negligent acts of their individual employees")." *D.V. v. City of Sunnyvale*, 65 F. Supp. 3d 782, 785 (N.D. Cal. 2014). "Since the enactment of the California Tort Claims Act in 1963 (§ 810 et seq.), a governmental entity can be held vicariously liable when a police officer acting in the course and scope of employment uses excessive force or engages in assaultive conduct." *Mary M. v. City of Los Angeles*, 54 Cal.3d 202, 215 (1991).

Moreover, California Health and Safety Code § 1799.106 provides for liability for police officers rendering emergency medical services at scene of an emergency in a grossly negligent manner, "gross negligence" meant the failure to provide even scant care or an extreme departure from the ordinary standard of conduct. *Megargee v. Wittman*, (E.D.Cal.2008) 550 F.Supp.2d 1190.

C.    Battery Is Sufficiently Plead.

During the drill, JON-MARQUES was inflicted with a head injury by DOE 4, which caused a brain bleed. Based on information and belief, the brain bleed was intentionally inflicted upon JON-MARQUES. FAC, ¶ 25. DOE 4 touched Recruit PSALMS with the specific intent to harm or offend him. Recruit PSALMS did not consent to the actions of DOE 4. FAC, ¶ 56. Recruit PSALMS was harmed, suffered, and then died because of the DOE 4's actions. FAC, ¶ 57. A reasonable person in Recruit PSALMS's position would have been offended by the touching. FAC, ¶ 58.

As a direct and legal result of the intentional actions of the DOE 4, JON-MARQUES received life threatening injuries that killed him despite going through brain surgery for brain bleeds that he suffered from, as well as his pain, suffering, fear, worry, trepidation, and other injuries before dying. FAC, ¶ 59.

**XI.    ALTERNATIVELY, PLAINTIFF REQUESTS LEAVE TO AMEND**

"If a complaint is dismissed for failure to state a claim, leave to amend should

18

be granted unless the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir.1986). Leave to amend should be granted even if the plaintiff did not request leave, unless it is clear that the complaint cannot be cured by the allegation of different facts. *Doe v. U.S.*, 58 F.3d 494, 497 (9th Cir.1995).

## XII.   CONCLUSION

For the reasons set forth above, Plaintiff respectfully requests the Court deny Defendants' Motion to Dismiss in its entirety.

Dated: July 27, 2026                    Respectfully Submitted,
                                        Brad Gage Law
                                        A Professional Corporation

                                        By   /s/Milad Sadr
                                            Bradley C. Gage
                                            Milad Sadr
                                            Sarah E. Gage
                                            Attorneys for Plaintiff

PLAINTIFF'S OPPOSITION D's MOTION TO DISMISS FAC