UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

San Francisco Division

CHRISTINA PSALMS, et al.,

Plaintiffs,

v.

CITY AND COUNTY OF SAN FRANCISCO, et al.,

Defendants.

Case No. 26-cv-03880-LB

**ORDER GRANTING MOTION TO DISMISS**

Re: ECF No. 23

**INTRODUCTION AND STATEMENT**

The plaintiffs are beneficiaries of Jon-Marques Psalms — who died after participating in a "Red Man" training exercise with the San Francisco Police Department (SFPD) — and are suing the City and County of San Francisco (CCSF), the SFPD, Captain Christopher Canning, Lieutenant Raymond Cruz, and Does 3–10, asserting claims against Canning, Cruz, and Doe 4 on state-created danger (claim 2) and deprivation-of-familial-relationship theories (claim 3) in violation of their due process rights under the Fourteenth Amendment, *Monell* liability (claim 5) against the CCSF, negligence (claim 4) against all defendants, and battery (claim 1) against Doe 4.

The parties dispute whether qualified immunity bars the plaintiffs' state-created danger and familial-deprivation claims and whether the plaintiffs have otherwise plausibly pleaded their claims. The court grants the motion and dismisses all claims with leave to amend. The plaintiffs have not plausibly pleaded their state-created danger or familial-deprivation claims, and on these

pleadings, qualified immunity applies, leaving no constitutional predicate for their *Monell* claim. Without any plausibly pleaded federal claims, the court lacks jurisdiction over the remaining state-law claims. The plaintiffs must amend their complaint by September 17, 2026, and file with it a blackline compare (in color).

Jon-Marques Psalms joined the SFPD academy in May 2025.[1] He had "no known medical conditions that would have impaired his ability to safely participate in academy training" and "was in excellent physical health."[2] The defendants did not check him for any unknown medical conditions.[3]

On August 20, 2025, Psalms participated in a "Red Man" training exercise, which involved "strenuous calisthenics designed to significantly elevate recruits' heart rates prior to a simulated combat scenario."[4] The plaintiffs allege that Canning, Cruz, and Doe 4 (an SFPD officer) forced Psalms to participate in the drill "despite well-known dangers of the drill and lack of safety precautions."[5] Doe 4 inflicted Psalms with a head injury during the drill that caused a brain bleed. After completing the exercise, Psalms was found lying face down on the ground.[6] He was transported to UCSF Medical Center and, despite medical intervention, died on August 22, 2025.[7] The cause of death was "Post-Exertional Secondary Rhabdomyolysis and Cerebral Hypoxic-Ischemic Brain Injury due to an unauthorized blow to his head and Post-Exertional Cardiac Arrhythmogenic Collapse/Syncope due to Congenital Cardiomyopathy and Channelopathy," which could have been diagnosed with medical screening and testing before participating in the Red Man drill.[8]

[1] First Am. Compl. (FAC) – ECF No. 17 at 9 (¶ 24). Citations refer to material in the Electronic Case File (ECF); pinpoint citations are to the ECF-generated page numbers at the top of documents.

[2] *Id.*

[3] *Id.* at 9 (¶ 24).

[4] *Id.* at 9–10 (¶ 25).

[5] *Id.* at 2–4 (¶¶ 5–6, 11), 17 (¶ 69).

[6] *Id.* at 9–10 (¶¶ 25, 27).

[7] *Id.* at 10 (¶ 28), 13–14 (¶¶ 44, 48).

[8] *Id.* at 13 (¶ 44), 15 (¶ 52).

United States District Court
Northern District of California

Canning, Cruz, and Doe 4 did not "determine a health baseline" for Psalms, did not measure or monitor his vital signs, and knew that supervisory personnel were not trained to ensure that the Red Man drill would not harm recruits.[9] "Since 2005, drills intended to teach defensive tactics at law enforcement academies have been linked to at least a dozen deaths and hundreds of injuries," and Massachusetts banned the use of Red Man drills in 2016.[10]

All parties consented to magistrate-judge jurisdiction under 28 U.S.C. § 636(c).[11] The court held a hearing on August 20, 2026.

**LEGAL STANDARD**

A complaint must contain a short and plain statement of the claim showing that the pleader is entitled to relief to give the defendant fair notice of the claim and the grounds upon which it rests. Fed. R. Civ. P. 8(a); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "A complaint may fail to show a right to relief either by lacking a cognizable legal theory or by lacking sufficient facts alleged under a cognizable legal theory." *Woods v. U.S. Bank N.A.*, 831 F.3d 1159, 1162 (9th Cir. 2016). The court accepts as true the complaint's factual allegations and construes them in the light most favorable to the plaintiffs. *Interpipe Contracting, Inc. v. Becerra*, 898 F.3d 879, 886–87 (9th Cir. 2018). A complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.

**ANALYSIS**

The parties dispute whether qualified immunity bars the plaintiffs' state-created danger and familial-deprivation claims and whether the plaintiffs have otherwise plausibly pleaded their claims.

---

[9] *Id.* at 17–18 (¶¶ 71–73).

[10] *Id.* at 10 (¶¶ 29–32).

[11] Consents – ECF Nos. 4, 6.

United States District Court
Northern District of California

**1. State-Created Danger (Claim 2)**

The plaintiffs have not plausibly pleaded their state-created danger claim. A state generally has no duty to "protect individuals from third parties." *Martinez v. City of Clovis*, 943 F.3d 1260, 1271 (9th Cir. 2019) (cleaned up). There are two exceptions: (1) "a special relationship between the plaintiff and the state" or (2) "affirmatively plac[ing] [the plaintiff] . . . in danger by acting with deliberate indifference to a known or obvious danger," known as the "state-created danger" doctrine. *Id.* (cleaned up). The plaintiffs claim a state-created danger.

To establish liability under the state-created danger doctrine, the plaintiff must show that (1) "the officers' affirmative actions created or exposed [the plaintiff] to an actual, particularized danger that she would not otherwise have faced," (2) "the injury she suffered was foreseeable," and (3) "the officers were deliberately indifferent to the known danger." *Id.*

"For a defendant to act with deliberate indifference, he must recognize the unreasonable risk and actually intend to expose the plaintiff to such risks without regard to the consequences to the plaintiff." *Murguia v. Langdon*, 61 F.4th 1096, 1111 (9th Cir. 2023) (cleaned up). In other words, the state actor must "know that something is going to happen but ignore the risk and expose [the plaintiff] to it." *Id.* (cleaned up).

The defendants assert that the plaintiff state-created danger claims fail because (1) the plaintiff alleges omissions by the defendants, not affirmative acts, (2) the harm was not foreseeable because even Psalms was unaware of his medical vulnerability, and (3) the complaint contains no facts supporting deliberate indifference.[12] The plaintiffs respond by pointing to allegations in the FAC that they contend support a plausible claim.[13]

The plaintiffs have failed to plausibly plead affirmative acts or deliberate indifference by the defendants. Outside of the allegation that the defendants "forced" Psalms to participate in the Red Man drill, which is conclusory, the plaintiffs only allege what the defendants "did not" do: failing to determine a health baseline for Psalms, monitor vital signs during the drill, or train personnel

[12] Mot. – ECF No. 23 at 19–21.

[13] Opp'n – ECF No. 26 at 11–13.

United States District Court
Northern District of California

about monitoring devices.[14] Even viewing the facts in the light most favorable to the plaintiffs, the court cannot tell (and the plaintiffs do not explain) how the defendants' conduct amounts to affirmative acts instead of omissions. For deliberate indifference, the plaintiffs fail to engage with the defendants' arguments and have not explained how their allegations show that the defendants knew that something would happen to Psalms but exposed him to that risk anyway.

**2. Deprivation of Familial Relations (Claim 3)**

The defendants assert that the plaintiffs have failed to plausibly plead any allegations showing the conscience-shocking conduct required for a claim based on the deprivation of familial relations under the Fourteenth Amendment.[15] *Jones v. L.V. Metro. Police Dep't*, 873 F.3d 1123, 1132–33 (9th Cir. 2017) (only "[o]fficial conduct that 'shocks the conscience' in depriving parents of that interest is cognizable as a violation of due process"). The plaintiffs do not appear to dispute this in their opposition, stating only that they could "bring a familial association claim predicated on a state danger theory."[16] Thus, the plaintiffs have conceded this claim.

**3. Qualified Immunity**

"[T]he doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Mattos v. Agarano*, 661 F.3d 433, 440 (9th Cir. 2011) (en banc) (cleaned up) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)). Qualified immunity is "an immunity from suit rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial." *Mueller v. Auker*, 576 F.3d 979, 992 (9th Cir. 2009) (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)). "Under qualified immunity, an officer will be protected from suit when he or she 'makes a

---

[14] FAC – ECF No. 17 at 11–12 (¶¶ 36–39, 41), 17–18 (¶¶ 71–73).

[15] Mot. – ECF No. 23 at 21–22.

[16] Opp'n – ECF No. 26 at 14.

decision that, even if constitutionally deficient, reasonably misapprehends the law governing the circumstances.'" *Id.* (quoting *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004)).

"[Q]ualified immunity protects all but the plainly incompetent or those who knowingly violate the law." *Ziglar v. Abbasi*, 582 U.S. 120, 152 (2017). "The doctrine of qualified immunity gives officials breathing room to make reasonable but mistaken judgments about open legal questions." *Id.* at 150–51 (cleaned up). "[I]f a reasonable officer might not have known for certain that the conduct was unlawful[,] then the officer is immune from liability." *Id.* at 152.

In determining whether an official is entitled to qualified immunity, courts consider (1) whether the official violated a constitutional right of the plaintiff and (2) whether that constitutional right was "clearly established in light of the specific context of the case" at the time of the events in question. *Mattos*, 661 F.3d at 440. Courts may exercise their sound discretion in deciding which of these two prongs should be addressed first. *Id.* (citing *Pearson*, 555 U.S. at 235).

The parties only dispute the second prong. The defendants assert that qualified immunity applies because there is no consensus of cases stating that conducting a sanctioned academy defensive-tactics drill without medical pre-screening or electronic vital-sign monitoring violates the Fourteenth Amendment.[17] The plaintiffs respond by citing *Coby v. City of Tombstone* for the proposition that public officials are on notice that they may be liable under the state-created danger doctrine where (1) the harmed party encountered danger in the course of their employment duties, (2) the danger was created by assigning the employee to work in close proximity to a known risk, (3) the officials knew the actor who posed the risk, and (4) the officials increased the employee's vulnerability by misrepresenting the risks involved in the work or actively concealing the danger posed by the physical condition. No. CV-25-00226-TUC-JGZ, 2025 WL 3267904, at *8 (D. Ariz. Nov. 24, 2025) (citing *Pauluk v. Savage*, 836 F.3d 1117, 1122 (9th Cir. 2016); *L.W. v. Grubbs*, 974 F.2d 119 (9th Cir. 1992); *Polanco v. Diaz*, 76 F.4th 918 (9th Cir. 2023)).

On these pleadings, case law does not clearly establish that the defendants acted unlawfully under these circumstances. *Coby* is distinguishable. Coby — a police officer who was paired with

[17] Mot. – ECF No. 23 at 22–23.

two different K9s that attacked him — alleged that the defendants who supplied him with the K9s (1) knew that the dogs were not obedience trained, (2) refused to take back the first dog when Coby realized it was untrained, and (3) altered the second dog's medical records to hide its violent history. *Id.* at *2. Here, the plaintiff has not pleaded non-conclusory allegations showing that the defendants forced him to participate in the Red Man drill or that they performed an affirmative act (like altering records) to hide a potential danger from the plaintiff.

The cases *Coby* relies on (*Pauluk*, *Grubbs*, and *Polanco*) are also distinguishable. *Pauluk* involved defendants who denied an employee's requests to be transferred away from a building with a history of mold, with the employee ultimately dying of exposure to toxic mold. 836 F.3d at 1119–20. In *Polanco*, prison officials created dangerous conditions for prison guards by transferring inmates from another prison facing a Covid-19 outbreak before vaccines were available. 76 F.4th at 923–24, 927. In *Grubbs*, state employees (1) hired the plaintiff as a nurse in a custodial institution for young men, (2) led her to believe she would not be required to work alone with violent sex offenders, but (3) selected an inmate to work with her who "was considered very likely to commit a violent crime if placed alone with a female," resulting in the inmate raping the plaintiff. 974 F.2d at 120. These cases all feature defendants taking affirmative acts placing employees in dangerous situations. Conversely, the plaintiff here has only pleaded acts that the defendants failed to take to protect Psalms.

Even if *Coby* were not distinguishable, it would not have provided notice to the defendants because the order in *Coby* was filed in November 2025, three months after the plaintiff participated in the Red Man drill. *Coby*, 2025 WL 3267904, at *1; *see Brosseau*, 543 U.S. at 198 ("Because the focus is on whether the officer had fair notice that her conduct was unlawful, reasonableness is judged against the backdrop of the law at the time of the conduct.").

Thus, in addition to the plaintiffs' Fourteenth Amendment claims not being plausibly pleaded, qualified immunity also applies. Dismissal of these claims is without prejudice because additional facts may alter this analysis.

United States District Court
Northern District of California

**4. *Monell* Liability (Claim 5)**

Local governments are "persons" subject to liability under 42 U.S.C. § 1983 where official policy or custom causes a constitutional tort. *Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 690 (1978). The city cannot be held vicariously liable for the unconstitutional acts of its employees under the theory of respondeat superior. *Board of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 403 (1997); *Monell*, 436 U.S. at 691; *Fuller v. City of Oakland*, 47 F.3d 1522, 1534 (9th Cir. 1995).

To impose *Monell* entity liability under § 1983 for a violation of constitutional rights, a plaintiff must show that (1) the plaintiff possessed a constitutional right and was deprived of that right, (2) the municipality had a policy, (3) the policy amounts to deliberate indifference to the plaintiff's constitutional right, and (4) the policy was the moving force behind the constitutional violation. *Plumeau v. Sch. Dist. No. 40 Cnty. of Yamhill*, 130 F.3d 432, 438 (9th Cir. 1997). A *Monell* claim can be based on any of the following theories: (1) a longstanding practice or custom, (2) the failure to adequately train, or (3) a constitutional violation committed or ratified by an official with final policy-making authority. *Clouthier v. County of Contra Costa*, 591 F.3d 1232, 1249–50 (9th Cir. 2010), *overruled on other grounds by Castro v. County of Los Angeles*, 833 F.3d 1060 (9th Cir. 2016).

The plaintiffs' *Monell* claim fails because they have not plausibly pleaded an underlying constitutional violation.[18] Even if they had, the FAC does not identify a policy, custom, or practice or a final policymaker. The plaintiffs' do not make any argument to the contrary, providing only a citation to the FAC.[19]

**5. State-Law Claims (Claims 1 and 4)**

Without a federal claim, the court lacks supplemental jurisdiction over the state claims for negligence and battery. 28 U.S.C. § 1367.

---

[18] *See supra* Analysis §§ 1–3.

[19] Opp'n – ECF No. 26 at 15–17.

United States District Court
Northern District of California

## CONCLUSION

The court grants the motion and dismisses all of the plaintiffs' claims. The plaintiffs must amend their complaint by September 17, 2026, and file with it a blackline compare (in color).

**IT IS SO ORDERED.**

Dated: August 20, 2026

LAUREL BEELER
United States Magistrate Judge