Bradley C. Gage, Esq., S.B. No. 117808
brad@bradgagelaw.com
Milad Sadr, Esq., S.B No. 245080
milad@bradgagelaw.com
Sarah E. Gage, Esq., S.B. No. 306090
sarah@bradgagelaw.com
BRAD GAGE LAW
A Professional Corporation
23002 Victory Boulevard
Woodland Hills, California 91367
(818) 340-9252 Fax: (818) 340-9088

Attorneys for Plaintiffs,
CHRISTINA PSALMS, and MARCUS PSALMS individually and as successors in interest to JON-MARQUES PSALMS

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| CHRISTINA PSALMS, and MARCUS PSALMS individually and as successors in interest to JON-MARQUES PSALMS,<br><br>Plaintiffs,<br><br>vs.<br><br>CITY AND COUNTY OF SAN FRANCISCO, SAN FRANCISCO POLICE DEPARTMENT, DOE 4, and DOES 3,5-10, inclusive,<br><br>Defendants. | Case No. 3:26-cv-03880 LB<br><br>**SECOND AMENDED COMPLAINT**<br><br>**1. WILLFUL PHYSICAL ASSAULT**<br>**2. NEGLIGENCE**<br>**3. VIOLATION OF BANE ACT**<br>**4. BATTERY**<br><br>Trial Date: Not Set |

**SECOND AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL**

1. COME NOW PLAINTIFFS CHRISTINA PSALMS, and MARCUS PSALMS individually and as successors in interest to JON-MARQUES PSALMS, of which CHRISTINA PSALMS and MARCUS PSALMS are beneficiaries (hereafter "PLAINTIFFS") who demands a jury trial, and seeks monetary compensation against all of the Defendants, as follows.

2. CHRISTINA PSALMS and MARCUS PSALMS are residents of California and parents to decedent Jon-Marques Psalms.

3. At the time of his death, Jon-Marques Psalms was a resident of San Francisco County in the State of California.

4. At all times mentioned herein, defendant CITY AND COUNTY OF SAN FRANCISCO (hereafter also "CITY") was a public entity duly organized and existing under and by virtue of the laws of the State of California. The San Francisco Police Department ("SFPD") is a part of the city.

5. At all times relevant herein, DOE 3, was a resident of San Francisco or Alameda County. At all times relevant hereto, said defendants were acting within the course and scope of their employment as captains chiefs, policy makers, and/or civilian employees of the SFPD.

6. At all times relevant herein, defendant DOE 4 and Does 5-6, were residents of Alameda County. At all times relevant hereto, said defendants were acting

within the course and scope of their employment as police officers, sergeants, captains and chiefs, policy makers, and/or civilian employees of the SFPD.

7. At all times relevant herein, defendant DOE 4 and Does 5-6 was a San Franscisco Police Department officers engaged in the conduct alleged herein under color of State Law, and through the auspices of the City of San Francisco and San Francisco Police Department. Plaintiff alleges that the conduct and actions of Does 4 -6 as alleged herein occurred during DOE 4 and Does 5-6's normal working hours as San Francisco Police Department officers or occurred under the pretense that either was acting as a San Francisco Police Department officer or was made possible solely because of his, her, their position(s) as San Francisco Police Department officers. Plaintiffs further allege that Doe 4 and Does 5-6 acted at all times herein under the auspices, direction, command, instruction, and/or control of the San Francisco Police Department and its' Chief of Police.

8. At all times relevant herein, Defendant Does 7-10 were police officers, detectives. sergeants, captains and chiefs, policy makers, and/or civilian employees agents and representatives of the San Francisco Police Department and engaged in the conduct alleged herein under color of State Law, and through the auspices of the City of San Francisco and San Francisco Police Department. Plaintiff alleges that the conduct and actions of Does 7-10 as alleged herein occurred during Does 7-10's normal working hours as San

Francisco Police Department police officers, detectives. sergeants, captains and chiefs, policy makers, and/or civilian employees agents and representatives or occurred under the pretense that either was acting as a San Francisco Police Department police officers, detectives. sergeants, captains and chiefs, policy makers, and/or civilian employees agents and representatives or was made possible solely because of their position as a San Francisco Police Department police officers, detectives. sergeants, captains and chiefs, policy makers, and/or civilian employees agents and representatives. Plaintiffs further allege that Does 7-10 acted at all times herein under the auspices, direction, command, instruction, and/or control of the San Francisco Police Department and its' Chief of Police.

9. At all times relevant herein, defendants Does 3, and 5-10, were residents of the County of San Francisco, and were San Francisco Police Department police officers, sergeants, detectives, captains, lieutenants, chiefs, and/or civilian employees, agents and representatives of the San Francisco Police Department and employees, agents and representatives of the City of San Francisco. At all times relevant hereto, said defendants were acting within the course and scope of their employment as officers, sergeants, captains and chiefs, policy makers, and/or civilian employees of the San Francisco Police Department, a department and subdivision of defendant City of San Francisco . At all times relevant herein, said defendants were acting under color of law, to wit, under

the color of the statutes, ordinances, regulations, policies, customs, practices and usages of City of San Francisco, its chiefs', department and/or the State of California.

10. Plaintiffs are ignorant of the true names and capacities of defendants sued herein as Does 3 through 10, inclusive, and therefore sue these defendants by such fictitious names. Plaintiffs will amend this complaint to allege their true names and capacities when ascertained. Plaintiffs are informed and believe and thereon allege that each of the fictitiously named defendants is responsible in some manner for the occurrences herein alleged, and that Plaintiffs' injuries as herein alleged were directly and legally (proximately) caused by the acts and/or omissions of said fictitiously named defendants.

11. At all times relevant herein, all of the defendants engaged in the conduct alleged herein under color of State Law, and through the auspices of the City of San Francisco and San Francisco Police Department. Plaintiffs allege that the conduct and actions of defendants as alleged herein occurred during defendants normal working hours as San Francisco Police Officers, Supervisors, Managers, Captains or Chief or occurred under the pretense that either was acting as a San Francisco Police Department Officers, Supervisors, Managers, Captains or Chief or was made possible solely because of his/their position as a San Francisco Police Department Supervisors, Managers, Captains or Chiefs.

12. All of the acts complained of herein by Plaintiffs against Defendants were done and performed by said Defendants by and through their authorized agents, servants, partners, co-conspirators, alter egos, joint venturers, and/or employees, all of whom at all relevant times herein were acting within the course, purpose, and scope of said agency, service, joint venture, and/or employment capacity, but outside of the normal work setting. Moreover, Defendants and their agents ratified all of the acts complained of herein.

13. Reference to actions or conduct of "Defendants" shall include the singular and plural, and shall include all DOE Defendants to which the facts are later shown to apply.

14. On or about September 16, 2025, Plaintiffs filed comprehensive and timely claims for damages with the CITY pursuant to applicable sections of the California Government Code. A true and correct copy of that claim form is attached hereto as **exh "1"** and incorporated by this reference.

15. On or about October 28, 2025, Defendants rejected the claim. A true and correct copy of those rejections are attached hereto as **exh "2"** and incorporated by this reference.

## VENUE AND JURISDICTION

16. Defendants reside in this district and all incidents, events, and occurrences giving rise to this action occurred in this district.

## I. FACTUAL ALLEGATIONS

17. Plaintiffs CHRISTINA and MARCUS PSALMS, at all times mentioned herein, were individuals residing in San Bernardino County, State of California. CHRISTINA and MARCUS PSALMS are the parents of the decedent, JON-MARQUES PSALMS. They are the successors in interest, heirs, and personal legal representatives of the decedent to seek redress for the deprivation of the decedent's rights and for those damages that the decedent sustained and incurred before death, and the decedent would have been entitled to recover, had he lived as defined by Section 377.34 of the California Code of Civil Procedure. The Declaration of Christina Psalms is attached hereto as **exh. "3"**; the declaration of Marcus Psalms is attached hereto as **exh. "4"**.

18. Plaintiff, JON-MARQUES PSALMS at all times mentioned herein, was an individual residing in the City of SAN FRANCISCO, State of California. CHRISTINA and MARCUS PSALMS are the successors in interest.

19. The Plaintiffs sue as the successors in interest of JON-MARQUES PSALMS.

20. JON-MARQUES Psalms joined the SFPD Academy on May 5, 2025, as a member of the 286th Academy Class. Prior to entering the Academy, JON-MARQUES was in excellent physical health. JON-MARQUES had no known medical conditions that would have impaired his ability to safely participate in academy training. Defendants had a duty to check for any potential medical problems and failed to check or to discover any such conditions.

21. On or about August 20, 2025, JON-MARQUES participated in a high-intensity training exercise commonly referred to as a "Red Man" drill. The drill involved strenuous calisthenics designed to significantly elevate recruits' heart rates prior to a simulated combat scenario, and in this case, JON-MARQUES was subjected to intentional physical assault and battery.

22. During the drill, JON-MARQUES was inflicted with a head injury by DOE 4, which caused a brain bleed. Based on information and belief, the brain bleed was intentionally inflicted upon JON-MARQUES. Based on information and belief, the head injury was not supposed to occur as hits or strikes to the head were barred or forbidden.

23. During the training exercise the morning of August 20, 2025, instructors failed to properly monitor and protect the recruits from injury and failed to ensure the recruits were properly hydrated. Despite the known risk of exertional rhabdomyolysis during extreme physical training, Defendants failed to conduct appropriate medical screening or laboratory testing, including creatine kinase (CK) testing, to assess muscle breakdown or internal distress.

24. After the drill, JON-MARQUES was found lying face down on the ground. He suffered with a brain bleed. Based on information and belief, that brain bleed came from intentional actions of Defendants and each of them inflicting blows to the head of JON-MARQUES, in a willful, intentional and wanton manner.

The blows to the head of JON-MARQUES were deliberate acts in deliberate indifference to his health and safety.

25. JON-MARQUES was taken by ambulance to UCSF Medical Center Emergency Room after he collapsed because of the willful and wanton blows to his head which are not authorized in the Red Man drill. During a Red Man drill, the actions are supposed to be supervised by trained supervisors who are required to properly monitor and supervise the drills to avoid any injuries to the head. Instead, based on information and belief, the instructors allowed blows to the head of JON-MARQUES with feet, fists and batons deliberately causing life terminating injuries which are outside of any exclusive remedy in worker's compensation.

26. Since 2005, drills intended to teach defensive tactics at law enforcement academies have been linked to at least a dozen deaths and hundreds of injuries, some resulting in permanent disability.

27. In 2016, the State of Massachusetts banned the use of "Red Man" drills.

28. In 2020, a recruit who was training to be a deputy for the Santa Clara County Sheriff's Office died after engaging in a "Red Man" drill.

29. In 2024, the Texas Game Warden Academy was involved in several cases of cadets enduring four-on-one combat drills, sustaining severe concussions, skull fractures, and other debilitating injuries.

30. Title 8 CCR §3203(a)(4),(6) requires the employers to identify, evaluate, and correct workplace hazards. Hence, SFPD was legally required to identify, evaluate, and correct hazards present with the "Red Man" drill.

31. Title 8, CCR section 1070 requires properly trained instructors and a sufficient number of instructors to protect recruits and others participating in Red Man drills from injury.

32. Objectively, the hazards present with the "Red Man" drill are well-known in law enforcement and the knowledge of those risks is beyond debate. Yet, Defendants have intentionally refused to remedy known hazards despite actual knowledge of the deficiencies and risks to the lives of trainees.

33. On or about August 20, 2025, Defendants intentionally did not determine a health baseline for JON-MARQUES even though such a measurement is essential to safe implementation of high-intensity drills such as "Red Man" And failed to properly protect participants with safety equipment including protective head gear and the appropriate number of safety instructors to protect JON MARQUES.

34. In fact, under SFPD General Order 11.10, active officers participate in the SFPD Physical Fitness Evaluation Program to measure and establish their baseline physical capabilities.

35. Additionally, on or about August 20, 2025, Defendants did not measure or in any way medically monitor JON-MARQUES 's vital signs.

36. Defendants did not know or monitor vital signs during high-intensity drills is essential to the safety of participants.

37. Measuring vital signs has become common in police departments and other places where high-intensity exercises are employed.

38. Title 8 CCR §3203(a)(7) requires the employer to provide training and instruction. Here, on or about August 20, 2025, supervisory personnel present were not trained to ensure that intense training would not harm the recruits. Defendants did not provide training of other means such as the use of electronic monitoring devices to supervise personnel during the recruits' intense physical training. These devices are to monitor the vital signs of the recruits during their intense exercise, equally important, there was not adequate safety gear for the recruits heads and not proper safety equipment, including without limitation proper matts, and video recordings so that recruits would see safety violations and avoid such risky life threatening activities..

39. At approximately 9:00 a.m. that morning (Wednesday, August 20th, 2025), JON-MARQUES 's parents, Marcus Psalms and Christina Psalms, were contacted by Sergeant Ryan Jones, who stated JON-MARQUES was being evaluated for dehydration following intensive calisthenics. Plaintiffs were not informed that JON-MARQUES had been found unconscious, sustained a head injury, or that he was found face down on the ground. Thus, Defendants concealed evidence of the intentional injuries inflicted on JON-MARQUES.

This act of active concealment was an attempt by defendants to cover up and conceal the intentional assault and battery on JON-MARQUES as well as lack of proper supervision and safety equipment, which even OSHA cited Defendants for based on information and belief.

40. When Christina Psalms arrived at UCSF later that day, she was informed for the first time that JON-MARQUES was suffering from rhabdomyolysis and a brain bleed. Which defendants had concealed from her. Shortly thereafter, JON-MARQUES experienced respiratory distress and cardiac arrest, was placed on life support, and never regained consciousness. Before he died, JON-MARQUES was conscious and capable of appreciating and understanding the pain, fear and suffering associated with his catastrophic injuries that lead to his wrongful death.

41. The next morning, Thursday August 21, 2025, JON-MARQUES was determined to be stable enough to move and get a CT scan done. Subsequent imaging confirmed an active brain bleed and severe brain swelling–a fatal condition inexplicably left out of the coroner's report. The neurosurgeon believed that surgery, although risky, was necessary as a last-ditch effort to save JON-MARQUES 's life. John suffered pain, fear, emotional distress, and other non-economic damages before he died.

42. While in the ICU waiting room during JON-MARQUES 's surgery, Christina was approached by one of JON-MARQUES 's doctors, Dr. O'Brien. The

doctor asked Christina to tell him more information about when JON-MARQUES was found unconscious at the academy. This was the first time Christina had heard anything about JON-MARQUES being unconscious as it was also part of the code of silence. Christina looked at the two officers (Laura Anderson and Jennifer Viceral), who looked at each other before saying they didn't know anything about that.

43. Following the surgery, the family was notified that the outcome was not good and the swelling and brain bleeding were way worse than they had initially believed. There was also no lower brain stem activity detected.

44. The next morning, Friday August 22, 2025, the hospital team began to discuss the transition off of life support with JON-MARQUES 's family. The SF Mayor, SFPD Chiefs, Sergeants, Lieutenants, and JON-MARQUES 's fellow recruits arrived at the hospital and gathered in the ICU. Also present were Captain Chris Canning and Lieutenant Ray Cruz.

45. The family said their goodbyes to JON-MARQUES that evening. He was pronounced dead on August 22, 2025, at 6:27 p.m.

46. **Error! Bookmark not defined.**If the medical monitoring and training was properly performed and supervised, JON-MARQUES would not have suffered from either rhabdomyolysis or a brain bleed, his other serious medical conditions, and would not have died.

**<u>FIRST CAUSE OF ACTION</u>**

**FOR WILLFUL PHYSICAL ASSAULT/BATTERY**

**BY ALL PLAINTIFFS AGAINST DOE 4**

47. Each and every allegation set forth in the preceding paragraphs is incorporated herein by this reference with the same effect as if re-alleged herein.

48. Plaintiffs bring this cause of action as a survival claim on behalf of their now deceased son.

49. Pursuant to Cal. Government Code §§ 815.2, 815.3, Defendant CITY is directly and vicariously liable for the acts and/or omissions of DOE 4 since those acts were committed in the course and scope of employment.

50. Pursuant to Cal. Labor Code § 3602(b)(1), willful physical assaults do not fall under worker's compensation exclusivity.

51. During the Red Man drill, JON-MARQUES was intentionally, recklessly and/or wantonly inflicted with a head injury by DOE 4, which caused a brain bleed. Based on information and belief, the brain bleed was intentionally inflicted upon JON-MARQUES. Based on information and belief, the head injury was not supposed to occur as hits or strikes to the head were barred or forbidden.

52. DOE 4 engaged in physical conduct toward Jon-Marques that a reasonable person would perceive to be a real, present, and apparent threat of bodily harm.

53. DOE 4 touched Recruit PSALMS with the specific intent to harm or offend him. Jon-Marques did not consent to the actions of DOE 4.

54. Jon-Marques was harmed, suffered, and then died because of the DOE 4's actions.

55. A reasonable person in Jon-Marques's position would have been offended by the touching.

56. DOE 4 intended to harm Jon-Marques.

57. Jon-Marques was harmed.

58. DOE 4's conduct was a substantial factor in Jon-Marques' harm.

59. DOE 4 acted on behalf of Defendant CITY. Defendant city is vicariously liable for the actions of its employees.

60. The CITY learned of DOE 4's conduct, and all material facts involved in his actions after it occurred. The CITY approved of DOE 4's conduct. DOE 4 was not disciplined, not punished, or otherwise rebuked by the CITY for his conduct.

61. As a direct and legal result of the intentional actions of the DOE 4, Jon-Marques received life threatening injuries that killed him despite going through brain surgery for brain bleeds that he suffered from, as well as his pain, suffering, fear, worry, trepidation, and other injuries before dying.

62. The Plaintiffs are entitled to damages incurred to Jon-Marques before his death, and their own claims for wrongful death, loss of consortium, economic and non-economic damages, and costs according to proof at time of trial and more than the minimal jurisdiction of this court.

63. The acts of DOE 4 are willful, wanton, malicious, and oppressive and said misconduct shocks the conscience, thereby justifying the awarding of exemplary and punitive damages against all individual defendants. Punitive damage is not sought against the City as it is statutorily immune.

**SECOND CAUSE OF ACTION**
**FOR NEGLIGENCE BY ALL PLAINTIFFS**
**AGAINST ALL DEFENDANTS**

64. Each and every allegation set forth in the preceding paragraphs is incorporated herein by this reference with the same effect as if realleged herein

65. Plaintiffs bring this cause of action as a survival claim.

66. In *Burden v. Snowden* (1992) 2 Cal.4th 556, 561, the California Supreme Court held police recruits are not peace officers and thus, not covered by Public Safety Officers Procedural Bill of Rights Act (POBRA) (Govt.C. 3300 et seq.).

67. To "assure that stable relations are continued throughout the state and to further assure that effective services are provided to all people of the state, it is necessary that this chapter be applicable to all public safety officers, as defined in this section, wherever situated within the State of California." (Govt.C. 3301.)

68. Active police officers "of any regularly organized police department having official recognition and full or partial support of the government of the county, city, town or district in which such police department is located," must be

deemed employees of that entity for purposes of the workers' compensation law, if the governing body of that entity has adopted a resolution so declaring. (Lab.C. 3362.).

69. Here, JON-MARQUES was not an employee of the City. Neither JON-MARQUES nor his parents received any worker's compensation or benefits afforded to employees. The City did not pay for JON-MARQUES' funeral, burial, and other attendant costs/expenses of his passing.

70. Defendants had a duty of due care to protect recruits.

71. Defendants breached the duty of care which caused the damage and injuries alleged herein.

72. Defendants are negligent per se for violations of statutes, rules and laws.

73. As a direct, legal, and proximate result of the shooting, Plaintiffs have sustained pecuniary and non-pecuniary damages resulting from the loss of society, comfort, companionship, attention, services, and support of the decedent in an amount in excess of the jurisdictional limit of the Court and subject to proof at trial. As a further direct, legal and proximate result of the acts or omissions of the aforesaid Defendants as herein alleged, Plaintiffs have incurred special damages, including Recruit JON-MARQUES PSALMS's funeral and burial damages, in excess of the jurisdictional limit of this Court and subject to proof at trial. As a further legal, direct, and proximate result of the acts or omissions on the part of the Defendants, Plaintiffs have sustained pecuniary damages

resulting from the loss of financial and household contributions that decedent could have reasonably been expected to provide had he not been killed.

**THIRD CAUSE OF ACTION**
**VIOLATION OF THE BANE ACT**
**BY ALL PLAINTIFFS AGAINST ALL DEFENDANTS**

74. Each and every allegation set forth in the preceding paragraphs is incorporated herein by this reference with the same effect as if re-alleged herein.

75. Each and every allegation set forth in the preceding paragraphs is incorporated herein by this reference with the same effect as if re-alleged herein.

76. Plaintiffs bring this cause of action as a survival claim on behalf of their now deceased son.

77. Pursuant to Cal. Government Code §§ 815.2, 815.3, Defendant CITY is directly and vicariously liable for the acts and/or omissions of DOE 4 and all other DOES that participated in the assault, battery and other harm to plaintiff since those acts were committed in the course and scope of employment.

78. DOE 4 and other Defendants acted violently against Jon-Marques to prevent Jon-Marques from exercising his rights to bodily integrity, right to employment, and/or rights under California/federal law.

79. DOE 4 and other defendants intended to deprive Jon-Marques of his rights, and/or DOE 4 acted with reckless disregard for Jon-Marques' rights.

80. Jon-Marques was harmed.

81. DOE 4's and other Defendants conduct was a substantial factor is causing the harm.

82. As a direct and legal result of the intentional actions of the DOE 4, Jon-Marques received life threatening injuries that killed him despite going through brain surgery for brain bleeds that he suffered from, as well as his pain, suffering, fear, worry, trepidation, and other injuries before dying.

83. The Plaintiffs are entitled to damages incurred to Jon-Marques before his death, and their own claims for wrongful death, loss of consortium, economic and non-economic damages, and costs according to proof at time of trial and more than the minimal jurisdiction of this court.

84. The acts of DOE 4 are willful, wanton, malicious, and oppressive and said misconduct shocks the conscience thereby justifying the awarding of exemplary and punitive damages.

## FOURTH CAUSE OF ACTION

## BATTERY

## BY PLAINTIFFS AGAINST DOE 4

85. Each and every allegation set forth in the preceding paragraphs is incorporated herein by this reference with the same effect as if re-alleged herein.

86. Plaintiffs bring this cause of action as a survival claim on behalf of their now deceased son.

87. Pursuant to Cal. Government Code §§ 815.2, 815.3, Defendant CITY is directly and vicariously liable for the acts and/or omissions of DOE 4 since those acts were committed in the course and scope of employment.

88. DOE 4 touched Recruit PSALMS with the specific intent to harm or offend him. Recruit PSALMS did not consent to the actions of DOE 4.

89. Recruit PSALMS was harmed, suffered, and then died because of the DOE 4's actions.

90. A reasonable person in Recruit PSALMS's position would have been offended by the touching.

91. As a direct and legal result of the intentional actions of the DOE 4, JON-MARQUES received life threatening injuries that killed him despite going through brain surgery for brain bleeds that he suffered from, as well as his pain, suffering, fear, worry, trepidation, and other injuries before dying.

92. The Plaintiffs are entitled to damages incurred to JON-MARQUES PSALMS before his death, and their own claims for wrongful death, loss of consortium, economic and non-economic damages, and costs according to proof at time of trial and in excess of the minimal jurisdiction of this court.

93. The aforementioned acts of DOE 4 was willful, wanton, malicious, and oppressive and said misconduct shocks the conscience thereby justifying the awarding of exemplary and punitive damages.

WHEREFORE, Plaintiffs pray for the following:

1. Compensation for both economic and non-economic damages suffered and to be suffered;
2. Pain, suffering, emotional distress, survivor benefits, and all other wrongful death damages;
3. Punitive damages against individual defendants;
3. Legal and other expenses incurred by Plaintiffs;
4. Medical and hospital bills;
5. Litigation costs;
6. Attorneys' fees, and civil penalties as allowed by statute;
7. Interest; and
8. Any other relief or damages allowed by law, or statutes not set out above, and such further relief as the Court deems just and proper at conclusion of trial.

Dated: September 17, 2026

Respectfully Submitted,
Brad Gage Law
A Professional Corporation

By *<u>/s/Milad Sadr</u>*
Bradley C. Gage
Milad Sadr
Sarah E. Gage
Attorneys for Plaintiffs